2003 UT 16

**Robert BRADLEY, Joyce Bradley, R. Dale Whitelock, Karma Whitelock, Louis Peterson, and Barbara Peterson, Plaintiffs and Petitioners,**

v.

**PAYSON CITY CORPORATION, Defendant and Respondent.**

No. 20010233.

Supreme Court of Utah.

May 2, 2003.

Scott L. Wiggins, Mark E. Arnold, Salt Lake City, for petitioners.

Jody K. Burnett, Salt Lake City, David C. Tuckett, Payson, for respondent.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case arises from the decision of the Payson City Council (Payson City or City Council) to deny Plaintiffs' two applications to rezone property within Payson City (the property) from R–1–A low density residential/agricultural use to R–2–75 high density residential use. The trial court determined that Payson City's decision was arbitrary and capricious because it was not supported by "substantial evidence." The court of appeals reversed the decision of the trial court, holding that application of the "substantial evidence" standard was erroneous because Payson City's zoning decision was a legislative decision. *Bradley v. Payson City*, 2001 UT App 9, ¶ 28, 17 P.3d 1160. Under the court of appeals' view of the arbitrary and capricious standard, only quasi-judicial or administrative decisions are subject to the "substantial evidence" standard while legislative decisions are subject to the more deferential "reasonably debatable" standard.

## BACKGROUND

¶ 2 The Plaintiffs below are owners of property in Payson City zoned as R–1–A, which is a low-density residential zone. The property is located west of Interstate 15 (I–15) and is surrounded by property that is also zoned R–1–A. Some two and one-half blocks east of the property is a large area of land that is zoned R–2–75, which is the same zoning designation the Plaintiffs seek. The 1995 Payson City General Plan (General Plan), which was in effect at the time the Plaintiffs sought rezoning, forecasts primarily residential land use east of I–15 and industrial and agricultural uses for property west of I–15. While the intent of the General Plan seems to be to utilize I–15 as a natural buffer between residential and industrial uses, the Payson Planning Zone Map (Payson Zone Map), also adopted in 1995, does provide for some areas of residential use west of I–15.

¶ 3 In January 1996, the Plaintiffs applied to rezone their property from R–1–A to R–2–75, which is a residential zoning designation that permits multiple family dwellings. During a meeting before the Payson City Planning Commission (Planning Commission) on the issue of the rezone application, the Chairperson acknowledged that because "there are already other residential developments in the surrounding area where this rezone would take place, there may not be a problem in rezoning this to R–2–75." After considering the Plaintiffs' R–2–75 rezone application, the Planning Commission Staff Report recommended that the Planning Commission recommend approval of the rezone to the Payson City Council.

¶ 4 At the public hearing before the Planning Commission on Plaintiffs' rezone application, a petition signed by thirty-eight people was submitted by a neighborhood group that opposed the zoning change. In addition, thirteen individuals at the hearing expressed their opposition to the R–2–75 rezone. The public opposition voiced concerns over the adequacy of the area's infrastructure as well as concerns about maintaining the agricultural nature of the area, which includes using the land for raising horses. Several public comments also supported the rezone. After public comment, the Planning Commission recommended that the Payson City Council deny the R–2–75 rezone.

¶ 5 The City Council then held a public hearing on the R–2–75 rezone application. The same thirty-eight signature petition was submitted to the City Council, and, subject to one or two exceptions, the same individuals appeared before the City Council as before the Planning Commission. In addition to voicing concerns about raising animals and preserving the nature of the neighborhood, other comments raised concerns about traffic levels in the area. Advocates of the application, including planning expert Jim Wilbert, expressed the area's need for low income housing. Ultimately, the City Council voted to deny the rezoning based upon the General Plan, traffic concerns, and the Planning Commission's recommendation.

¶ 6 The Plaintiffs later submitted a second Zoning Change Application, requesting that their property be rezoned from R–1–A to R–1–9. An R–1–9 zoning is a medium-density residential zoning. Both the Planning Commission staff and the Planning Commission recommended approval of the R–1–9 rezone. The R–1–9 rezoning came before the City Council for public hearing on May 22, 1996. Public input included comments by representatives of businesses in the abutting industrial area. Associated Foods raised concerns that truck noise would cause residents to seek action against it. Representatives of a fruit-processing plant questioned whether residents would tolerate the noise and smell of its packing facilities. After the hearing was closed, the City Council voted to deny the R–1–9 rezoning request.

¶ 7 The Plaintiffs commenced this action by verified complaint on April 1, 1997. They alleged that the Payson City Council's denials of their rezone requests were arbitrary and capricious and that the denials constituted a taking without just compensation. Payson City filed a motion for summary judgment, requesting that the district court dismiss the complaint because the Payson City Council had acted within its legislative prerogative. The Plaintiffs responded by filing a cross-motion for summary judgment. The trial court entered a Memorandum Decision on January 22, 1999, reversing the City Council's denial of the Plaintiffs' R–2–75 rezone application, finding that the denial had no evidentiary support and was therefore arbitrary and capricious. Consequently, the district court did not address the denial of Plaintiffs' second rezone application.

¶ 8 Payson City appealed the trial court's decision directly to this court, after which this court transferred the appeal to the court of appeals pursuant to Utah Rule of Appellate Procedure 44. On January 11, 2001, the court of appeals issued an opinion reversing the district court's decision, concluding that the trial court had applied the incorrect standard of review to Payson City's legislative land use decisions and that under the "reasonably debatable" standard, Payson City's denial of the rezoning requests was not arbitrary, capricious, or illegal. *Bradley,* 2001 UT App 9 at ¶ 28, 17 P.3d 1160. The Plaintiffs then filed a petition for writ of certiorari to review the substance of the court of appeals' decision. Payson City filed a cross-petition for a writ of certiorari challenging the court of appeals' conclusion that it had original appellate jurisdiction to decide the appeal.

## STANDARD OF REVIEW

¶ 9 When reviewing a city council's decision not to change the zoning classification of property, we presume that the decision is valid and "determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3) (1999). The principal issue in this case is the meaning of "arbitrary and capricious" in the context of Payson City's decision not to change the zoning classification of the Plaintiffs' property. This is a legal issue which we review for correctness. *Springville Citizens for a Better Cmty. v. City of Springville,* 1999 UT 25, ¶ 22, 979 P.2d 332.

## ANALYSIS

### I. APPROPRIATE STANDARD OF REVIEW GOVERNING APPEALS OF MUNICIPAL LAND USE DECISIONS

#### A. *Distinction Between Legislative and Administrative Actions*

¶ 10 This court has long recognized that municipal land use decisions should be upheld unless those decisions are arbitrary and capricious or otherwise illegal. *Gayland v. Salt Lake County,* 11 Utah 2d 307, 358 P.2d 633, 636 (1961); *Marshall v. Salt Lake City,* 105 Utah 111, 141 P.2d 704, 709 (1943). Indeed, municipal land use decisions as a whole are generally entitled to a "great deal of deference." *Springville Citizens for a Better Cmty. v. City of Springville,* 1999 UT 25, ¶ 23, 979 P.2d 332. However, in specific cases the determination of whether a particular land use decision is arbitrary and capricious has traditionally depended on whether the decision involves the exercise of legislative, administrative, or quasi-judicial powers. When a municipality makes a land use decision as a function of its legislative powers, we

have held that such a decision is not arbitrary and capricious so long as the grounds for the decision are "reasonably debatable." *Marshall*, 141 P.2d at 709 (reviewing municipal zoning decision as legislative function and employing reasonably debatable standard); *Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 252 (Utah Ct.App.1998) (same). When a land use decision is made as an exercise of administrative or quasi-judicial powers, however, we have held that such decisions are not arbitrary and capricious if they are supported by "substantial evidence." *Xanthos v. Bd. of Adjustment of Salt Lake City*, 685 P.2d 1032, 1034-35 (Utah 1984) (reviewing board of adjustment decision as an administrative act and employing substantial evidence standard).

■ ¶ 11 There is no dispute in this case that the enactment and amendment of zoning ordinances is fundamentally a legislative act. *Sandy City v. Salt Lake County*, 827 P.2d 212, 221 (Utah 1992) ("[t]he passage of general zoning ordinances and the determination of zoning policy [are] properly vested in the legislative branch") (quoting *Scherbel v. Salt Lake City Corp.*, 758 P.2d 897, 899 (Utah 1988)). The political nature of the decision making process underlying municipal zoning demands that the power to make such decisions be vested in persons who are publicly accountable for their choices. *See Marshall*, 141 P.2d at 709 (noting that accountability for balancing competing interests in zoning decisions properly resides in the "governing body of the city").

¶ 12 We have long recognized that zoning decisions that are made as an exercise of legislative powers are entitled to particular deference. In *Crestview–Holladay Homeowners Ass'n. Inc. v. Engh Floral Co.*, we noted that

> [t]he prior decisions of this court without exception have laid down the rule that the exercise of zoning power is a legislative function to be exercised by the legislative bodies of the municipalities. The wisdom of the zoning plan, its necessity, the nature and boundaries of the district to be zoned are matters which lie solely within that discretion. It is the policy of this court as enunciated in its prior decisions that it will

avoid substituting its judgment for that of the legislative body of the municipality. 545 P.2d 1150, 1152 (Utah 1976) (citing *Marshall*, 105 Utah 111, 141 P.2d 704; *Phi Kappa Iota Fraternity v. Salt Lake City*, 116 Utah 536, 212 P.2d 177 (1949); *Dowse v. Salt Lake City Corp.*, 123 Utah 107, 255 P.2d 723 (1953); *Naylor v. Salt Lake City Corp.*, 17 Utah 2d 300, 410 P.2d 764 (1966)). Given this deferential disposition, we have held that it is "the court's duty to resolve all doubts in favor" of the municipality, and the burden is on the plaintiff challenging a municipal land use decision to show that the municipal action was clearly beyond the city's power. *Gayland*, 358 P.2d at 636.

■ ¶ 13 In light of the particular deference we accord legislative zoning decisions, we have regularly distinguished zoning decisions that are made as a function of legislative power from decisions that are made as an exercise of either administrative or quasi-judicial power. Legislative zoning decisions involve the determination and enactment of zoning policies and cannot be delegated to other governmental bodies. *Sandy City*, 827 P.2d at 221. Such decisions are distinct from administrative or quasi-judicial zoning decisions. For example, in *Sandy City*, we noted that while a municipality has the authority to formulate and implement zoning policies as an exercise of legislative power, a municipality cannot thereafter delegate some portion of that authority to a board of adjustment because a board of adjustment is a quasi-judicial body designed only to correct specific zoning errors. *Id.* at 220–21; *see also Salt Lake County Cottonwood Sanitary Dist. v. Sandy City*, 879 P.2d 1379, 1383 (Utah Ct. App.1994) (recognizing distinction between executive and legislative powers with respect to zoning decisions); *Xanthos*, 685 P.2d at 1034 (treating board of adjustment decision as an administrative act).

### B. The "Reasonably Debatable" and "Substantial Evidence" Tests

■ ¶ 14 As mentioned at the outset, our recognition of the distinction between legislative and administrative or quasi-judicial municipal powers has consistently determined the proper standard of review applicable to

municipal land use disputes. For legislative decisions, we have applied a highly deferential variation of the arbitrary and capricious standard and limited our review to the strict question of whether the zoning ordinance " 'could promote the general welfare; or even if it is reasonably debatable that it is in the interest of the general welfare.' " *Smith Inv. Co.*, 958 P.2d at 252 (quoting *Marshall*, 141 P.2d at 709); *Walker v. Brigham City*, 856 P.2d 347, 349 (Utah 1993) (holding that the municipality's legislative decision would be upheld unless "wholly discordant to reason and justice"); *Dowse*, 255 P.2d at 724 (holding that zoning could be attacked only if there was "no reasonable basis therefor"). "The selection of one method of solving the problem in preference to another is entirely within the discretion of the [city]; and does not, in and of itself, evidence an abuse of discretion." *Phi Kappa Iota Fraternity*, 212 P.2d at 181.

■ ¶ 15 For administrative or quasi-judicial land use decisions, however, the substantial evidence test has traditionally applied. We have defined substantial evidence as "that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank of Boston v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990) (reviewing administrative evaluation of property for tax purposes). This standard has been applied to an array of administrative and quasi-judicial land use decisions. *See e.g., Xanthos*, 685 P.2d at 1035 (reviewing board of adjustment's denial of a zoning variance); *Brown v. Sandy City Bd. of Adjustment*, 957 P.2d 207, 210 n. 5 (Utah Ct.App. 1998) (reviewing city's administrative interpretation of its zoning ordinance); *Wells v. Bd. of Adjustment of Salt Lake City Corp.*, 936 P.2d 1102, 1105 (Utah Ct.App.1997) (reviewing board of adjustment decision denying variance); *Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 604 (Utah Ct. App.1995) (reviewing trial court's finding of an arbitrary and capricious action by county in approving special exception to zoning ordinance). Thus, while municipal land use decisions in Utah are valid unless arbitrary and capricious, the specific meaning of that standard is dependent upon the nature of the land use decision at issue.

## II. MEANING AND EFFECT OF UTAH CODE SECTION 10–9–1001(3) AND THE SPRINGVILLE CITIZENS CASE

¶ 16 The Plaintiffs do not dispute the existence of the traditional distinction between the standard of review applicable to legislative as opposed to administrative and quasi-judicial land use decisions. Rather, they claim that since the Utah Legislature's adoption of Utah Code section 10–9–1001 and this court's decision in *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, 979 P.2d 332, the substantial evidence test is now applicable to all municipal land use decisions, whether legislative, administrative, or quasi-judicial.

¶ 17 The starting point for the Plaintiffs' "one-size-fits-all" approach to the standard of review for municipal land use decisions is the Utah Legislature's 1991 enactment of Utah Code section 10–9–1001. That provision codified the procedures for appealing municipal land use decisions. Section 10–9–1001(3) addresses the judicial standard of review for such decisions, stating:

(3) The courts shall:

(a) presume that land use decisions and regulations are valid; and

(b) determine only whether or not the decision is arbitrary and capricious, or illegal.

Utah Code Ann. § 10–9–1001(3) (1999). The Plaintiffs argue that section 10–9–1001(3) was intended to create a single standard of review for all municipal land use decisions and that it impliedly overrules this court's earlier decisions applying different interpretations of the arbitrary and capricious standard to different exercises of municipal power.

■ ¶ 18 "When construing statutory language which is plain and unambiguous, we do not look beyond the same to divine legislative intent." *Cole v. Jordan Sch. Dist.*, 899 P.2d 776, 778 (Utah 1995). The plain language of section 10–9–1001(3) clearly states that the arbitrary and capricious standard is applicable to all municipal land use decisions. However, the statute does not address the

distinct applications of the arbitrary and capricious standard to legislative, administrative, and quasi-judicial decisions that we have recognized for more than half a century. In the absence of express statutory language to the contrary, we do not presume that the legislature, in enacting section 10–9–1001(3), intended to overrule the prior decisions of this court and impose a uniform interpretation of the arbitrary and capricious standard for all municipal land use decisions, regardless of whether those decisions are legislative, administrative, or quasi-judicial. *See id.* (noting that in the absence of express statutory language the court·will not assume the legislature intended to overrule an earlier decision of this court when it enacted a statutory amendment).[1]

¶ 19 To support their claim that section 10–9–1001(3) does indeed apply to all three kinds of municipal land use decisions, the Plaintiffs rely on our opinion in *Springville Citizens*. In that case we stated, "[a] municipality's land use decision is arbitrary and capricious if it is not supported by substantial evidence." *Springville Citizens*, 1999 UT 25 at ¶ 24, 979 P.2d 332. The Plaintiffs interpret this language as a "sweeping statement" that the court had, "without reservation, unanimously accepted the legislature's plain language" in section 10–9–1001(3). We disagree.

¶ 20 The dispute in *Springville Citizens* arose out of Springville City's approval of a planned unit development (PUD) pursuant to city ordinances. *Springville Citizens*, 1999 UT 25 at ¶¶ 1, 2, 979 P.2d 332. A developer sought approval of a PUD pursuant to those ordinances and the procedures contained therein. *Id.* at ¶ 2. The plaintiff's action alleged that Springville City's approval of the PUD was arbitrary, capricious, and illegal because Springville City had failed to follow

its own mandatory ordinances in approving the PUD. *Id.* at ¶ 12.

¶ 21 In holding that Springville City's decision was not arbitrary and capricious, we did not discuss whether the decision was legislative, administrative, or quasi-judicial: we stated simply that "[a] municipality's land use decision is arbitrary and capricious if it is not supported by substantial evidence." *Id.* at ¶ 24. The Plaintiffs read this language as announcing a uniform standard of review for *all* municipal land use decisions. Nothing in *Springville Citizens*, however, evidences this court's intent to abandon the traditional distinction between the standard of review for legislative, administrative or quasi-judicial decisions. Furthermore, nothing in *Springville Citizens* suggests, as the Plaintiffs argue, that the legislature's 1991 enactment of section 10–9–1001(3) affected our application of the arbitrary and capricious standard to different exercises of municipal power. The essence of the Plaintiffs' argument is that *Springville Citizens* overruled the cases recognizing the legislative/administrative distinction by implication.

¶ 22 For its part, Payson City has tried to reconcile *Springville Citizens* with this court's prior municipal land use cases by explaining that the decision in that case was an administrative one that required application of the substantial evidence test. Payson City argues that all of the issues we addressed in *Springville Citizens* arose from the administrative processing of the PUD application pursuant to the standards set forth in city ordinances. Specifically, they note that the court focused on the certification of drawings by an irrigation company, *Springville Citizens*, 1999 UT 25, ¶ 15, 979 P.2d 332, whether the planning commission had reviewed the final plat, engineering drawings and documents as required by city ordinance, *id.* at ¶ 16, whether modification

1. The court of appeals agreed with this interpretation of section 10–9–1001(3) in *Harmon City, Inc. v. Draper City*, 2000 UT App 31, 997 P.2d 321. In upholding a city council's refusal to rezone property for a shopping center on the grounds that the city's decision was reasonably debatable, the court of appeals rejected the plaintiff's argument that section 10–9–1001(3) required the uniform application of the substantial evidence test under the arbitrary and capricious standard. After reviewing the earlier case law we have discussed in this opinion, the court concluded that

> the 1991 enactment of section 10–9–1001(3), which largely codifies [municipal land use case law], did not alter the deferential review of a municipality's legislative zoning classification decisions under the arbitrary and capricious standard.

*Id.,* ¶ 14.

required by the city council to the final subdivision plat had been referred to the planning commission as required by city ordinance, *id.* at ¶ 17, and others examples. Each of these examples prove, Payson City argues, that the focus was on compliance with procedural requirements, not with "any basic policy decisions involving the exercise of legislative discretion." A more direct explanation for our statement of the standard of review in that case, however, is found in Springville City's assertion in its brief in that case that the challenged decision was "an administrative one" that was subject to the substantial evidence test. Brief for Appellee, at 19, *Springville Citizens for a Better Cmty. v. City of Springville*, 1999 UT 25, 979 P.2d 332 (No. 980028). Given that the municipality itself acknowledged both the administrative nature of the decision and the applicability of the heightened substantial evidence test, it is not surprising that we stated municipal land use decisions were subject to the substantial evidence test; the municipality conceded as much.

¶ 23 Thus, what the Plaintiffs describe as a "sweeping statement" of a new "one-size-fits-all" standard of review in *Springville Citizens* was nothing more than a recognition that both the parties and the court agreed that the challenged action was administrative and should be subject to the substantial evidence test. The absence of an acknowledgment of the distinction between legislative and administrative decisions in *Springville Citizens* stemmed solely from the fact that the standard of review was not a contested issue in that case. Therefore, we decline the invitation to treat *Springville Citizens* as a deviation from our traditional application of the arbitrary and capricious standard to different types of municipal land use decisions.[2]

## III. UNDER THE REASONABLY DEBATABLE STANDARD PAYSON CITY'S DENIAL OF THE PLAINTIFFS' REZONING REQUEST WAS NOT ARBITRARY AND CAPRICIOUS

¶ 24 Having concluded that the reasonably debatable standard applies to legislative municipal land use decisions, we now proceed to evaluate whether Payson City's denial of the Plaintiffs' rezoning request was arbitrary and capricious under that standard. In general, because a "zoning classification reflects a legislative policy decision," we will not interfere with that decision "except in the most extreme cases." *Harmon City*, 2000 UT App 31 at ¶ 18, 997 P.2d 321. The guiding principle behind our interpretation of legislative zoning decisions is that we will not substitute our judgment for that of the municipality. *Crestview–Holladay Homeowners Ass'n.*, 545 P.2d at 1152. Though a municipality may have a myriad of competing choices before it, "[t]he selection of one method of solving the problem in preference to another is entirely within the discretion of the [city]; and does not, in and of itself evidence an abuse of discretion." *Phi Kappa Iota Fraternity*, 212 P.2d at 179. The propriety of the zoning decision need only be "reasonably debatable." *Marshall*, 141 P.2d at 709.

¶ 25 The Plaintiffs argue that the court of appeals erred in holding that Payson City's denial of their rezoning request was not arbitrary and capricious under the reasonably debatable standard. The Plaintiffs argue that there was a general lack of evidence presented to the Payson City Council to support the reasonableness of its denial of the rezone application. The Plaintiffs further argue that the basis of Payson City's decision contradicted some record evidence supporting the zoning change. We will address each of the Plaintiffs' specific arguments in turn.

---

2.  Relying on its earlier decision in *Harmon City*, 2000 UT App 31, 997 P.2d 321, the court of appeals in its decision below also read *Springville Citizens* as involving an administrative decision that was subject to the substantial evidence test. *Bradley*, 2001 UT App 9, ¶ 15, 17 P.3d 1160. The court noted that *"Springville Citizens* involved judicial review of an administrative proceeding governed by city ordinances that expressly limited the city's discretion over PUD approvals." *Id.* Because the decision was administrative, the court of appeals recognized that *Springville Citizens* required application of the substantial evidence test while Payson City's legislative zoning decision must be evaluated under the reasonably debatable standard. *Id.*

¶ 26 First, the Plaintiffs argue that Payson City's zoning decision was unreasonable to the extent it was based on the General Plan's recognition of I–15 as a natural buffer between residential and industrial uses. The Plaintiffs argue that Payson City failed to consider that, unlike the General Plan, the Payson Zone Map actually provides for large areas of residential use west of I–15 and that their proposed rezoning would be consistent with the uses of neighboring properties in the zone map. This discrepancy between the General Plan and the Payson Zone Map is not conclusive evidence that Payson City's decision was arbitrary and capricious. To the contrary, Payson City's reliance on the General Plan as a basis for its decision is precisely the kind of legislative decision that should be left to the city council and undisturbed by the judiciary. It is not up to the court to determine whether Payson City made the right decision or the best decision in relying on the General Plan rather than the Payson Zone Map. We evaluate only whether it was reasonably debatable that the decision reached would promote the general welfare. Payson City's reliance on the long-term policy preferences embodied in the General Plan satisfies the reasonably debatable standard.

¶ 27 Additionally, the Plaintiffs assert that Payson City "almost exclusively relied on public comment[s]" made at the public hearing before the city council as a basis for the denial of their rezoning proposal and argue that citizen opposition alone cannot be the basis for the municipality's action. *See Davis County v. Clearfield City*, 756 P.2d 704, 712 (Utah Ct.App.1988) (applying substantial evidence test to denial of conditional use permit and holding that citizen opposition alone is an insufficient basis for denial of permit). For example, the Plaintiffs argue that Payson City relied on citizens' concerns about increased traffic as a basis for the denial of the rezone application, even though no actual evidence of traffic problems was presented other than those public comments.

¶ 28 It is beyond question, however, that public hearings and citizen comments are a legitimate source of information for city council members to consider in making legislative decisions. *See Harmon City*, 2000 UT App 31 at ¶ 26, 997 P.2d 321 (noting that "a city may rely on the concerns of interested citizens when performing legislative functions"). In reviewing the city council's decision, we do not apply trial-like "formal rules of procedure or evidence" to evaluate the substance of public comments received by the city council. *Gayland*, 358 P.2d at 635. Rather, we presume that city council members will measure public comments against their own personal knowledge of the various conditions in the city that bear upon zoning decisions. *See id.* at 636. A city council's ultimate decision, of course, reflects legislative preferences that are entitled to a presumption of validity. *Id.*

¶ 29 Like the court of appeals in its decision below, we are satisfied that Payson City's consideration of public comments as a justification for its zoning decision reflects a reasonable judgment that properly took into account citizens' concerns. The court of appeals cited a number of items in the record to support this conclusion:

> Specifically, two businesses in the area expressed concern over the compatibility of higher density residential areas with their businesses and the neighboring industrial zones. One of the businesses submitted a letter detailing why it located in the area. This business stated it was attracted to the area because the "master plan ... was far sighted enough to separate the industrial area from the residential area by a natural break." The business stated that it operates twenty-four hours a day with "bright dock lights, and large trucks ... all of which would be a concern for the future residential area that is proposed." Another businessman in the area testified that because his business was contiguous to the proposed zone change he felt he would be out of business within a year because neighboring residents would not tolerate the noise and smell from his fruit processing plant.

*Bradley*, 2001 UT App 9 at ¶ 23, 17 P.3d 1160. Additionally, the court of appeals noted that many residents opposed the zoning change because they wanted to maintain the area for agricultural uses such as keeping

and raising horses, which might be incompatible with high-density residential development. *Id.* at ¶ 26. Each of these concerns is a legitimate ground for denying the Plaintiffs' proposed zoning change. Payson City has the right to deny a zoning change request if it "has a reasonable basis to believe that it will conserve the values of other properties and encourage the most appropriate use thereof." *Smith Inv. Co.*, 958 P.2d at 255.

¶ 30 Furthermore, with respect to the Plaintiffs' argument that there was no evidentiary support behind public comments about increased traffic, we simply note that a city council is not required to receive advice from experts before making a legislative zoning decision. Moreover, we are not persuaded that the comments of the Plaintiffs' planning expert, Jim Wilbert, cast doubt on the reasonability of Payson City's decision. Mr. Wilbert spoke at the public hearing in favor of the zone change because it would bring affordable housing to the nearby industrial center. However, even assuming that affordable housing is an important addition to the city plan, Mr. Wilbert's comments do not directly refute the concerns raised by local business owners and other residents about the compatibility of high-density residential housing in the industrial and agricultural zones. *See Bradley*, 2001 UT App 9, ¶ 27, 17 P.3d 1160. The City Council's decision to give greater weight to Mr. Wilbert's opponents and deny the rezoning simply reflects the exercise of legislative policy preferences that are entirely within its discretion.

¶ 31 Finally, the Plaintiffs challenge Payson City's reliance on the Planning Commission's negative recommendation as a basis for the rezone denial. The Plaintiffs contend that the Planning Commission's decision was predicated entirely on neighboring citizens' opposition to the proposed rezone and that reliance on such views was an unreasonable basis for the zoning decision. In light of our holding that it was reasonable for the City Council to rely on public comments in making its decision, we need not also address the reasonability of the Planning Commission's similar reliance.

## IV. THE COURT OF APPEALS DOES NOT HAVE ORIGINAL APPELLATE JURISDICTION OVER CASES ARISING FROM LAND USE DECISIONS BY LOCAL GOVERNMENTAL ENTITIES

¶ 32 Payson City originally appealed the trial court's reversal of the City Council's decision to deny the Plaintiffs' rezone application directly to this court. *Bradley*, 2001 UT App 9 at ¶ 8, 17 P.3d 1160. Pursuant to Rule 44 of the Utah Rules of Appellate Procedure, this court then transferred the appeal to the court of appeals, stating that the appeal was not within our original appellate jurisdiction. *Id.*

¶ 33 Under Utah Code section 78–2a–3, the court of appeals has original jurisdiction to hear appeals from trial court review of "adjudicative proceedings of *agencies of* political subdivisions of the state or other local agencies." Utah Code Ann. § 78–2a–3(2)(b)(i) (2002) (emphasis added). This provision is designed to establish a body of expertise in the court of appeals for review of such "adjudicative proceedings" under the Utah Administrative Procedures Act. Utah Code Ann. §§ 63–46b–0.5 to –22 (1997 & Supp.2001). The Utah Administrative Procedures Act governs "all state agency actions." *Id.* § 63–46b–1(1)(a). An "adjudicative proceeding" is specifically defined as an action by a state agency under the Administrative Procedures Act. *Id.* § 63–46b–2(1)(a). The Act specifically *excludes* from the definition of "agency" "any political subdivision of the state, or any administrative unit of a political subdivision of the state." *Id.* § 63–46b–2(1)(b); *Davis County*, 756 P.2d at 706–07. Critically, the appeal in this case arises not from an "adjudicative proceeding," but rather from a limited judicial review of a local legislative land use decision under Utah Code section 10–9–1001. Thus, it is apparent that Utah Code section 78–2a–3 does not give the court of appeals original jurisdiction over appeals from district court review of land use decisions by the governing body of a municipality. The governing body of a municipality cannot be an "agenc[y] of [a] political subdivision[ ] of the state" under that section. *See* Utah Code Ann. § 78–2a–3(2)(b)(i).

¶ 34 In an attempt to resolve the confusion created by the jurisdictional statutes and our transfer of this appeal, the court of appeals nevertheless determined that "it must have jurisdiction" and stretched the meaning of section 78–2a–3 to accommodate this view.[3] *Bradley,* 2001 UT App 9 at ¶ 9, 17 P.3d 1160. The court noted:

> The supreme court, however, seems to have consistently determined that it does not have original appellate jurisdiction over zoning cases under the catch-all provision found in section 78–2–2(3)(j). Accordingly, this court must have jurisdiction. Examining section 78–2a–3, the only provision that could apply is subsection 2(b)(i) which gives this court jurisdiction over "appeals from the district court review of adjudicative proceedings of agencies of political subdivisions of the state or other local agencies...." *Utah Code Ann.* § 78–2a–3(2)(b)(i) (1996). As Payson City's counsel noted, however, this case does not arise from an "adjudicative" proceeding, but rather a legislative proceeding. Nevertheless, in order to effectuate the supreme court's order transferring these appeals to this court, "adjudicative" must be read broadly to include both administrative and legislative proceedings of state political subdivisions and local governments. Thus, read in conjunction with section 78–2–2, governing the supreme court's jurisdiction, section 78–2a–3(2)(b)(i) confers original appellate jurisdiction to this court over this matter.

*Id.*

¶ 35 We agree with Payson City that the court of appeals' conclusion on this point is not consistent with a close reading of the statutory language. The jurisdiction of the court of appeals is defined by section 78–2a–3(2). When interpreting statutes, we look primarily to the statute's plain language. *Hercules Inc. v. Utah State Tax Comm'n,*

877 P.2d 133, 136 (Utah 1994). Furthermore, we will not infer substantive provisions into a statute that are not expressly contained therein. *Cole v. Jordan Sch. Dist.,* 899 P.2d 776, 778. It is clear that there is no provision within section 78–2a–3(2) that expressly grants the court of appeals original jurisdiction over district court review of land use decisions by local governmental entities. We therefore conclude that this court has original appellate jurisdiction over such cases under Utah Code section 78–2–2(3)(j), which provides that this court has jurisdiction over "orders, judgments, and decrees of any court of record over which the court of appeals does not have original appellate jurisdiction." Utah Code Ann. § 78–2–2(3)(j).[4]

## CONCLUSION

¶ 36 Municipal land use decisions are presumed valid unless they are arbitrary and capricious. In this case, we reaffirm that whether a particular municipal land use decision is arbitrary and capricious depends upon whether the municipality has acted in a legislative, administrative, or quasi-judicial capacity. Legislative land use decisions are valid so long as they are reasonably debatable. Administrative and quasi-judicial decisions, however, continue to be subject to the substantial evidence test. Under the reasonably debatable standard, Payson City did not act arbitrarily and capriciously when it acted in a legislative capacity to deny the Plaintiffs' application to rezone their property.

¶ 37 Additionally, we hold that the court of appeals does not have original jurisdiction to hear challenges to land use decisions by municipal governing bodies, and vacate the decision of the court of appeals.

¶ 38 Associate Chief Justice DURRANT, Justice RUSSON, Justice WILKINS, and Judge BALDWIN concur in Chief Justice DURHAM'S opinion.

---

3. While we appreciate the court of appeals' valiant attempt to account for our transfer of this case to that court, we must observe that it overlooked another possible explanation: we incorrectly transferred it to them in the first place.

4. The legislature might consider amending section 78–2a–3(2) to give the court of appeals original jurisdiction over municipal zoning decisions. This could be accomplished by amending section 78–2a–3(2), which currently gives the court of appeals original jurisdiction over "adjudicative proceedings of agencies of political subdivisions of the state or other local agencies" to give that court original jurisdiction over "proceedings of political subdivisions of the state or their agencies."

¶ 39 Having recused himself, Justice HOWE does not participate herein; Second District Judge PARLEY R. BALDWIN sat.