2017 UT App 190

## THE UTAH COURT OF APPEALS

MICHAEL E. BAKER AND KATHLEEN M. PAPI-BAKER,
Appellants,
*v.*
PARK CITY MUNICIPAL CORPORATION,
Appellee.

Opinion
No. 20150956-CA
Filed October 13, 2017

Third District Court, Silver Summit Department
The Honorable Kara Pettit
No. 140500532

Bruce R. Baird, Attorney for Appellants

Mark D. Harrington and Polly Samuels McLean,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

ORME, Judge:

¶1     Appellants Michael E. Baker and Kathleen M. Papi-Baker
(collectively, the Bakers) sought review in the district court of a
decision, issued by the Park City Council (the Council), denying
their application for a plat amendment. The Bakers filed a
motion for summary judgment, arguing that their proposed
amendment complied with municipal zoning regulations and
that the Council withheld its permission unlawfully. The district
court denied their motion and instead granted the cross-motion
filed by Park City Municipal Corporation (the City). The Bakers
appeal. We affirm.

BACKGROUND

¶2　The Bakers are the current owners of "Dority Springs," also known as "Lot 83," located in the Holiday Ranchettes Subdivision (the Subdivision) in Park City, Utah. The Bakers' residence sits on the Dority Springs lot. Platted in 1974, the Subdivision is comprised of approximately 171 acres of land and 102 lots. While the Subdivision does contain seven lots that are one acre in size or less, including Dority Springs, the vast majority of the lots range between one and two acres. Twenty lots in the Subdivision are greater than two acres in size.

¶3　The Subdivision is included within Park City's "Single-Family District" zone. Single-family dwellings are among the allowed uses in the District and, absent a special exception, they are the only permitted residential dwellings within the Subdivision.[1] Although the actual density within the Subdivision is much different, the maximum subdivision density in the District is three units per acre, which means that each lot must have an area of at least 14,520 square feet, or one-third of an acre. Lots within the District have a minimum front-yard setback of twenty feet, a minimum rear-yard setback of fifteen feet, and a maximum structural height of no more than twenty-eight feet above existing grade. According to Park City's Land Management Code (the LMC), one of the purposes behind these

---

1. According to the record, the City's Land Management Code provides that within the Single-Family District, duplex dwellings are permitted only on lots designated for duplexes on the official plat. Dority Springs is not a designated duplex lot and it does not have the requisite special exception permitting a duplex in the Subdivision. The code further provides that detached guest houses and detached secondary living quarters are not permitted in the Subdivision.

land use restrictions is to "allow for Single Family Development Compatible with existing Developments."[2]

¶4     Although platted contemporaneously with the Subdivision's other lots, Dority Springs is unique among its neighbors for several reasons. To begin with, Dority Springs is located on the Subdivision's outermost rim, across the street from lots in the Park Meadows Subdivision No. 5. Those lots, also zoned for single-family dwellings, are much smaller than the average Subdivision lot and range between one-quarter and four-fifths of an acre in size. Down the street, there are also condominiums, a golf course, and a large fitness and recreation center. But behind and to both sides of Dority Springs, the Subdivision's lots are much larger, averaging nearly 1.7 acres.

¶5     Most importantly, Dority Springs is unique among the Subdivision's lots because of its unusual history. The lot, which contains springs and a pond, once served as a convenient water source for Park City firefighters. But after fire hydrants were installed, the Park City Fire Department had no need to access water on the lot. The special character of Dority Springs' wetlands, including its original utility as a natural water source for fighting fires, appears to explain why Dority Springs is exempt from the Subdivision's Covenants, Conditions, and Restrictions (the CC&Rs).

¶6     Nearly all lots in the Subdivision are subject to the Subdivision's CC&Rs, which expressly prohibit lot owners from further subdividing their lots. Rather mysteriously, however, two lots are exempted from the CC&Rs' limitations. Dority Springs is one of them. While the CC&Rs themselves do not offer a reason for Dority Springs' exemption, the Bakers and the City

---

2. The LMC does not appear to be readily available as a public resource. Given this, and the fact that the parties do not disagree about the content of any relevant provision of the LMC, we rely on the parties' and the record's recitation of its provisions.

agree that the most likely explanation is that the lot was not intended for residential development when the Subdivision was initially platted. They observe that Dority Springs' first building permit was not granted until 1993, nearly twenty years after the Subdivision was established and after the lot had lost its value to Park City firefighters as a water source. Moreover, while the CC&Rs exempt Dority Springs from all of the CC&Rs' generally applicable restrictions, the plat diagram included with the CC&Rs also designates Dority Springs as "Open Area."

¶7    Hoping to take advantage of their exemption from the Subdivision's CC&Rs, the Bakers petitioned the Council for a plat amendment that would allow them to subdivide Dority Springs and build a house on the newly created lot. As proposed, their plat amendment and construction plans complied with all the regulatory requirements of the LMC's Single-Family District.

¶8    The Bakers' petition was referred to the Park City Planning Commission (the Commission), which held two separate hearings on the matter. During those hearings, the Commission heard testimony from the Bakers, other homeowners who reside in the Bakers' neighborhood, and a representative from the Subdivision's homeowners' association. The Commission also heard testimony from a representative of Alliance Engineering, a civil engineering and surveying firm that prepared a survey of the site for the Commission's review. Finally, the Commission discussed whether the Council should consider the character of lots outside the Subdivision when making its decision or restrict the scope of its deliberations to the Subdivision alone.

¶9    The Commission forwarded a report to the Council in which it recommended that the Bakers' requested plat amendment be denied. The Commission supported its recommendation with sixty-three "findings of fact" and four "conclusions of law," all of which it included in its report, along with a summary of the evidence it reviewed during its

proceedings. The Commission's four enumerated "conclusions of law" were as follows:

1. The proposed plat amendment is not consistent with the Park City Land Management Code and applicable State Law regarding lot combinations.

2. The public will be materially injured by the proposed plat amendment as the proposed plat amendment is not compatible with the direct neighborhood in terms of lot size and depth.

3. Approval of the plat amendment does adversely affect health, safety, and welfare of the citizens of Park City.

4. There is Good Cause to deny the proposed plat amendment as the plat does cause undue harm on adjacent property owners because the proposal is not compatible with existing Single Family development (lots) in the near proximity.

¶10   On September 4, 2014, the Council denied the Bakers' application for a plat amendment. In its notice of denial, the Council expressly adopted all the findings of fact and conclusions of law recommended to it by the Commission.

¶11   The Bakers petitioned the district court for review of the Council's decision, and the parties filed cross-motions for summary judgment. In granting the City's motion, the court held, first, that the Council's decision was a "legislative act" and was therefore entitled to a high degree of deference.[3] In the

_____

3. In support of this conclusion, the district court quoted our Supreme Court's decision in *Suarez v. Grand County*, 2012 UT 72, 296 P.3d 688.

alternative, the court held that "even if the Council's denial of the Plaintiffs' application were an administrative decision . . . there is substantial evidence in the record" to support it. Finally, the district court held that the Council did not act illegally in declining to find "good cause" for approval of the plat amendment under section 609(1)(a) of Utah's Municipal Land Use Development and Management Act (MLUDMA).[4]

## ISSUES AND STANDARD OF REVIEW

¶12    The Bakers appeal the district court's order granting summary judgment in favor of the City. "Generally, 'we review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions.'" *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 6, 286 P.3d 301 (brackets omitted) (quoting *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539). This lack of deference to the district court's decision on summary judgment is not moderated when we are considering an appeal from district court review of a local land use determination, as explained below.

¶13    In their briefs, the parties devote considerable attention to the question of whether the Council's decision should be characterized as a legislative act or an administrative determination. At oral argument, however, counsel for both sides conceded that resolution of this issue is not dispositive and that the result would be the same in either circumstance. Both counsel further agreed that courts must accord greater deference to legislative acts than to administrative ones. In view of these concessions, we need not decide whether the decision was legislative or administrative in nature. Rather, we assume for purposes of this appeal that the Council's decision to deny the Bakers' proposed plat amendment was an administrative act and apply the more exacting of the two standards of review.

---

4. MLUDMA is codified in title 10, chapter 9a, of the Utah Code.

¶14    With that, the Bakers' arguments on appeal are reduced to two. First, the Bakers ascribe error to the district court's conclusion that the Council's decision was supported by substantial evidence and was therefore neither arbitrary nor capricious. Second, they contend that the Council's decision was illegal insofar as it relied on an overbroad interpretation of "good cause" as that term is used in MLUDMA.[5]

¶15    The appropriate standard of review was recently clarified by the Utah Supreme Court. While we review the district court's decision rather than the Council's decision directly, "[w]e afford no deference to the [district] court's decision and apply the statutorily defined standard to determine whether the court correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *McElhaney v. City of Moab*, 2017 UT 65, ¶ 26.

## ANALYSIS

### I. Substantial Evidence

¶16    We first consider whether the district court erred in holding that the Council's decision was supported by substantial evidence in the record. At the outset, we observe that the laws of

---

5. The Bakers also argue that the Council's decision violated "'fundamental fairness' as required by Section 10-9a-102(1)" of MLUDMA. Yet the section they cite imposes no specific duty on any municipal authority; rather, the section contains a list of legislative "purposes" that underpin MLUDMA. *See* Utah Code Ann. § 10-9a-102(1) (LexisNexis 2015). Further, the Bakers do not argue that case law in this state has linked the statutory language they quote to any affirmative duty on the part of a municipality. In fact, they concede that "there is no Utah case of which the Bakers are aware directly construing . . . what constitutes 'fundamental fairness in land use regulation.'"

this state and the jurisprudence of our Supreme Court accord "[a] municipality's land use decisions . . . a great deal of deference." *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, ¶ 23, 979 P.2d 332. *Accord* Utah Code Ann. § 10-9a-801(3)(a)(i) (LexisNexis 2015) ("The courts shall . . . presume that a decision [of a land use authority] made under the authority of this chapter is valid[.]"). Since "local county planning commissions . . . possess a certain degree of 'specialized knowledge' in their fields," municipal land use authorities "acting within the boundaries established by applicable statutes and ordinances" are entitled to a "'broad latitude of discretion.'" *Carrier v. Salt Lake County*, 2004 UT 98, ¶ 28, 104 P.3d 1208 (quoting *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 604 (Utah 1995)).

¶17    Section 801 of MLUDMA, in effect at the time of the dispute in this case, provided that a land use authority's administrative decision is valid if it is "supported by substantial evidence in the record and is not arbitrary [or] capricious." Utah Code Ann. § 10-9a-801(3)(c) (LexisNexis 2015).[6] "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a

---

6. In 2017, the Utah Legislature amended section 801(3) of MLUDMA and codified the holding of our Supreme Court in *Bradley v. Payson City*, 2003 UT 16, 70 P.3d 47, that an administrative land use decision is "not arbitrary and capricious if [it is] supported by substantial evidence." *Id.* ¶ 10 (citation and internal quotation marks omitted). Section 801(3)(c)(i) now provides that "[a] decision is arbitrary and capricious unless the decision is supported by substantial evidence in the record." Utah Code Ann. § 10-9a-801(3)(c)(i) (LexisNexis Supp. 2017). Section 801(3) was also amended in other respects, none of which are germane to the case before us. Throughout this opinion, we therefore cite the version of the Utah Code in effect at the time this dispute arose.

conclusion." *Salt Lake City S. R.R. v. Utah State Tax Comm'n*, 1999 UT 90, ¶ 7, 987 P.2d 594 (citations and internal quotation marks omitted). Furthermore, our Supreme Court has held that "[w]hen a land use decision is made as an exercise of administrative . . . powers, . . . [the] decision[ is] not arbitrary and capricious if [it is] supported by 'substantial evidence.'" *Bradley v. Payson City*, 2003 UT 16, ¶ 10, 70 P.3d 47.

¶18    "In determining whether substantial evidence supports [a municipal land use authority's] decision we will consider all the evidence in the record, both favorable and contrary to the [authority's] decision." *Patterson*, 893 P.2d at 604. "We do not, however, weigh the evidence anew or substitute our judgment for that of the municipality." *Springville Citizens*, 1999 UT 25, ¶ 24. Rather, "[w]e must simply determine, in light of the evidence before the [land use authority], whether a reasonable mind could reach the same conclusion as the [authority]." *Patterson*, 893 P.2d at 604. *See Carlsen v. Board of Adjustment*, 2012 UT App 260, ¶ 8, 287 P.3d 440.

¶19    With these principles in mind, we agree with the district court that the Council's decision was supported by substantial evidence. It was not arbitrary or capricious.

¶20    The Council cited four conclusions as the basis for its decision to deny the plat amendment. We need not hold that each one was supported by substantial evidence to conclude that the Council's ultimate decision was valid. Where administrative decisions are concerned, MLUDMA provides that a "land use authority may approve the . . . amendment of a plat . . . if the land use authority finds that . . . there is *good cause* for the . . . amendment." Utah Code Ann. § 10-9a-609(1)(a) (LexisNexis 2015) (emphasis added). In its fourth conclusion, the Council states:

> There is Good Cause to deny the proposed plat amendment as the plat does cause undue harm on adjacent property owners because the proposal is

> not compatible with existing Single Family development (lots) in the near proximity.

We conclude that the Council's fourth conclusion was sufficient by itself to support a valid administrative determination under MLUDMA. We therefore need not decide whether the Council's first, second, or third conclusions were supported by substantial evidence.

¶21 The Bakers argue, first, that the Council "did not apply the standard of Good Cause correctly," and second, that the Council's good cause for denying the plat amendment "is not supported by substantial evidence in the record." Turning to their first contention, the Bakers point out that the Council's fourth conclusion determined there was "Good Cause" to deny their amendment, while the statutory focus is on whether there is good cause to approve it. *See* Utah Code Ann. § 10-9a-609(1)(a) (providing that a land use authority may "approve" a plat amendment upon a showing of "good cause"). To the extent they are suggesting that the Council failed to comply with MLUDMA's analytical framework for considering proposed plat amendments, we are unconvinced.[7] The Council may well have

---

7. In addition to the fact that the Council's fourth conclusion does not comport perfectly with the language of section 609(1)(a), the Bakers also point out that the Council's first conclusion does not specify precisely which "State Law" stands as a bar to the Bakers' request. While it is not altogether clear from their briefing and oral argument, the Bakers appear to take the position that these shortcomings amounted to a wholesale failure on the Council's part to engage in the "good cause" inquiry contemplated by MLUDMA. It may be that they hesitate to make the argument more forcefully because they recognize that it is futile. As discussed in more detail below, section 609(1)(a) contains discretionary rather than mandatory language. *See* Utah Code Ann. § 10-9a-609(1)(a) (LexisNexis 2015) (continued…)

thought that the lack of "good cause" to approve the Bakers' amendment was readily inferable from its conclusion that there was "Good Cause" to deny it, and therefore an express conclusion to that effect would be stating the obvious. In any event, we will not insist upon absolute linguistic precision before upholding an administrative body's decision. The fact that the Council emphasized the phrase "Good Cause" by capitalizing both of its component words reinforces our conclusion that section 609(1)(a) was at the heart of the Council's analysis when it adopted its conclusion.[8]

¶22 Thus, having determined that the Council's fourth conclusion satisfied the administrative "good cause" inquiry under MLUDMA as a legal matter, we now turn to the Bakers' second contention, namely that the Council's conclusion was not supported by substantial evidence in the record. We hold that it was.

¶23 Since MLUDMA does not define "good cause," municipalities necessarily have some discretion in determining

---

(…continued)
(providing that a "land use authority *may* approve the . . . amendment of a plat . . . if the land use authority finds that . . . there is good cause for the . . . amendment") (emphasis added). Thus, even if the Council had expressly concluded that good cause existed for the Bakers' amendment, it would not necessarily have been obligated to approve it.

8. It is also possible that the Council was merely quoting the LMC's "Good Cause" standard, which employs the same scheme of capitalization in stating that "[p]lat amendments . . . shall require a finding of Good Cause[.]" The result would be no different even if that were so, since the "Good Cause" requirement set out in the relevant provision of the LMC is all but identical to the "good cause" standard articulated in section 609(1)(a) of MLUDMA.

what constitutes "good cause" for a plat amendment. And indeed, the LMC has fleshed out MLUDMA's otherwise generalized standard by defining "Good Cause" with some particularity:

> GOOD CAUSE. Providing positive benefits and mitigating negative impacts, determined on a case by case basis to include such things as: providing public amenities and benefits, resolving existing issues and non-conformities, addressing issues related to density, promoting excellent and sustainable design, utilizing best planning and design practices, preserving the character of the neighborhood and of Park City and furthering the health, safety, and welfare of the Park City community.

Under this definition, a reasonable mind could certainly conclude from the record that there was "Good Cause to deny the proposed plat amendment as the plat does cause undue harm on adjacent property owners."

¶24   First, the Council considered testimony received by the Commission that Dority Springs was already one of the smallest lots in the Subdivision. To subdivide it any further would therefore do nothing to "address[] issues related to density" or "preserv[e] the character of the neighborhood." Second, the Council considered testimony regarding Dority Springs' unique history, in addition to a diagram from the Subdivision's CC&Rs that designates Dority Springs as "Open Area." This evidence suggests that the lot would likely have been made subject to the Subdivision's CC&Rs, including the prohibition on the further subdividing of lots, had Dority Springs originally been intended to be a building lot instead of open space available to the Park City Fire Department as a water source. Allowing the Bakers to subdivide would therefore intensify the impact of their anomalous exemption, as the CC&Rs prohibit other homeowners in the Subdivision from subdividing their lots even

though most are larger than Dority Springs. Accordingly, approving the Bakers' request would not "resolv[e] existing issues and non-conformities" in the Subdivision. Rather, it would exacerbate them, in derogation of the reasonable expectations of other homeowners in the Subdivision.

¶25   Moreover, Dority Springs lies within the Single-Family District, and to remain consistent with the LMC, the Council considered the express "purposes" that underlie the regulations applicable to the Single-Family District.[9] One of those purposes, with our emphasis, is to "allow for Single Family Development *Compatible with existing Developments*." The LMC defines "compatible" characteristics as those that "integrate with and relate to one another to maintain and/or enhance the context of a surrounding [a]rea or neighborhood." In this regard, the Commission expressly found—and the Council later agreed—that "Good Cause" existed to deny the Bakers' plat amendment because their "proposal [was] not compatible with existing Single Family development . . . in the near proximity," by which they apparently meant the Subdivision proper and not the greater area.

¶26   While the Bakers' proposed plat amendment may have complied with every LMC requirement applicable within the Single-Family District, nevertheless the record contains ample evidence that the subdivided plat they proposed would not be

---

9. We see no reason why either the Commission or the Council should not look to the purposes underlying the applicable municipal regulations when considering "good cause" under MLUDMA, so long as those purposes are not inconsistent with state law. *See* Utah Code Ann. § 10-9a-102(2) (LexisNexis 2015) ("To accomplish the purposes of this chapter, municipalities may enact all ordinances, resolutions, and rules . . . that they consider necessary or appropriate for the use and development of land within the municipality[.]").

"[c]ompatible with existing Single Family developments" in the Subdivision itself. The Commission included in its report to the Council a five-factor analysis explaining how the proposed subdivided lots would compare with the lots surrounding them. With respect to two of those factors—lot depth and overall size—the Bakers' proposed lots would be at odds with the character of other lots within the Subdivision. It is true, as previously noted, that Dority Springs sits on the edge of the Subdivision, and there are non-Subdivision lots across the street that are smaller than those owned by the Bakers' neighbors in the Subdivision. But it is not our place to re-weigh the evidence, and a reasonable mind could certainly conclude that "maintain[ing] and . . . enhanc[ing] the context" of the Subdivision warrants drawing a hard line between lots that are inside the Subdivision and lots that are not.

¶27   Accordingly, because the Council's fourth conclusion finds sufficient support in the record—and even though its other conclusions may not be on so firm a footing—we agree with the district court that the Council's decision denying the Bakers' plat amendment was supported by substantial evidence and was not otherwise arbitrary or capricious.

## II. Illegality of the Decision

¶28   We therefore turn to the Bakers' second main argument on appeal, namely, that the Council's decision was illegal. "A determination of illegality requires a determination that the decision . . . violates a law, statute, or ordinance in effect at the time the decision was made[.]" Utah Code Ann. § 10-9a-801(3)(d) (LexisNexis 2015). Thus, the question "depends on a proper interpretation and application of the law." *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 604 (Utah 1995). "These are matters for our determination, and we accord no deference to the district court or the [land use authority]." *Id.*

¶29   This argument can be quickly put to rest. The Bakers maintain that the Council acted illegally when it "ignored the

presumption of approval [for plat amendments] under State law" and supplemented its reading of "good cause" under section 609(1)(a) with the LMC's more specific definition. However, the authority the Bakers cite in support of the "presumption" they posit is not on point. Quoting our Supreme Court's decision in *Western Land Equities, Inc. v. City of Logan*, 617 P.2d 388 (Utah 1980), they correctly observe that "an applicant is entitled to a . . . subdivision approval if his proposed development meets the zoning requirements in existence at the time of his application . . . , absent a compelling, countervailing public interest." *Id.* at 396. But the Bakers did not apply for approval of a new subdivision; they applied to amend a subdivision that was already in existence.

¶30  Applicants seeking to plat a new subdivision—typically, developers—are entitled to have their applications reviewed under section 603 of MLUDMA. That section provides that "if the plat conforms to the municipality's ordinances . . . and has been approved by the culinary water authority, the sanitary sewer authority, and the local health department, . . . the municipality *shall* approve the plat." Utah Code Ann. § 10-9a-603(2)(a) (LexisNexis 2015) (emphasis added). *See DCH Holdings, LLC v. Nielsen*, 2009 UT App 269, ¶ 3 n.1, 220 P.3d 178 (explaining that section 10-9a-603 governs the process for approving the creation of a plat). In contrast, applicants seeking to amend an existing plat must proceed under the approval process articulated in section 609. As noted above, that section provides that a "land use authority *may* approve the . . . amendment of a plat . . . if the land use authority finds that . . . there is good cause for the . . . amendment." Utah Code Ann. § 10-9a-609(1)(a) (emphasis added). In short, unlike applications to plat new subdivisions, applications for plat amendments do not enjoy a presumption of regularity with an expectation of approval.

¶31  Accordingly, we take no issue with the City's decision to supplement section 609(1)(a)'s general standard of "good cause"

with a more specific definition where that definition is not in conflict with MLUDMA. Indeed, MLUDMA itself provides that "[t]o accomplish the purposes of this chapter, municipalities may enact all ordinances . . . that they consider necessary or appropriate for the use and development of land within the municipality." *Id.* § 10-9a-102(2). The LMC's supplemental definition of "Good Cause" appears to be an excellent example of just such an ordinance. We therefore agree with the district court that the Council's decision to deny the Bakers' plat amendment was not illegal.

## CONCLUSION

¶32   We agree with the district court that, given the evidence in the record, the Council could reasonably conclude that the Bakers' proposed plat amendment lacked "good cause" under MLUDMA. We further agree that the Council's decision rested upon a proper interpretation of MLUDMA and was therefore not illegal. Accordingly, we hold that the district court did not err in granting summary judgment to the City.

¶33   Affirmed.

_____