2018 UT App 48

# THE UTAH COURT OF APPEALS

CHRIS CHECKETTS AND SANDRA CHECKETTS,
Appellants,
*v.*
PROVIDENCE CITY AND
PROVIDENCE CITY APPEAL AUTHORITY,
Appellees.

Opinion
No. 20160570-CA
Filed March 22, 2018

First District Court, Logan Department
The Honorable Brandon J. Maynard
No. 140100362

Stephen K. Christiansen, Attorney for Appellants

Craig M. Call and Jonathan W. Call, Attorneys
for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
KATE A. TOOMEY and DIANA HAGEN concurred.

ORME, Judge:

¶1      After Providence City (the City) notified Chris and Sandra
Checketts of its determination that their home business violated
several local ordinances, the Checkettses brought the matter
before the Providence City Appeal Authority (the Appeal
Authority). The Appeal Authority solicited comments from the
public and permitted the parties to present evidence and
argument at a hearing, and in the end, it concluded that the
City's decision was not arbitrary, capricious, or illegal. The
Checkettses sought review of the Appeal Authority's decision in
the district court, with even less success: the court concluded
that the decision was adequately supported by the record and
granted the City an award of attorney fees. The Checkettses now

appeal the decision of the district court. We affirm the court's determination that the Appeal Authority's decision was proper but reverse its decision to award attorney fees to the City.

BACKGROUND

¶2     The Checkettses own two noncontiguous lots in a neighborhood situated within a "Single Family Traditional" zone (SFT Zone) of Providence, Utah. The first lot (the Residence Lot) has been the Checkettses' residence for more than twenty years. Their second lot (the Business Lot) is three doors down from the Residence Lot. Prior to 2005, the Checkettses built a shed on the Business Lot, which they used for storing personal items.

¶3     The Checkettses are business owners. In 2003, the City granted them a license to operate a home business, "Custom Counter Tops," on the Residence Lot. The 2003 license described the business activities of Custom Counter Tops as "[receiving] orders by fax or phone for countertops" and "[a]ssembl[ing], deliver[ing] and install[ing] tops on [site] in homes mostly in the Cache Valley area." The following year, the City issued the Checkettses a new business license, which described their business activities as manufacturing and installing solid surface counter tops. The City renewed that license annually until 2008.

¶4     As the Checkettses were getting their home business off the ground, they apparently vacillated on how to best use the Business Lot. In June 2004, they applied for a permit to build a shed "addition" on the lot, without indicating that it would be used for business purposes. The stated purpose of this addition was to "add[] to the square footage" of the existing shed so they could "stor[e] personal vehicles/mechanical toys." But although the City approved the application, the building permit expired before construction commenced. Then, in November 2005, the Checkettses applied for a second building permit, this time indicating that the proposed shed addition would be used for "commercial" purposes. The City approved the second

application, and, by May 2007, the Checkettses had constructed their shed and it had passed all necessary inspections. Significantly, the City made express reference to the first application in its decision to approve the second.

¶5     In June 2008, several of the Checkettses' neighbors filed a complaint with the City regarding the activities the Checkettses were conducting on the Business Lot.[1] The Checkettses, their neighbors claimed, had been operating heavy machinery to manufacture and sell large slabs of granite on the lot, and they had also been inviting the public into the neighborhood to view samples of finished countertops. A few weeks later, the City mailed a letter to the Checkettses notifying them that they were operating their business "in violation of Providence City Ordinances" (the City Code) and ordering them to relocate their business within six months.

¶6     Months passed, and in May 2009, the City sent another letter to the Checkettses referencing the previous communication regarding compliance deadlines. The Checkettses responded by claiming unexpected financial difficulties and requesting an extension. The City granted their request, extending their compliance deadline to December 31, 2009. A few weeks before the compliance deadline expired, the City extended it by one year to December 2010 based on "several options" that would bring the Business Lot into compliance, including purchasing the adjoining lot. In February 2010, the Checkettses sent the City a letter informing it that they were moving forward with purchasing a strip of land extending from the Residence Lot to the Business Lot and that their understanding was that this purchase would bring them into compliance.

¶7     In April 2011, after seeking an advisory opinion on the status of the Checkettses' business from the Office of the

---

1. Among the neighbors who filed the complaint with the City were two who later formally intervened.

Property Rights Ombudsman, the City informed the Checkettses that it would not renew their business license that year and instead invited them to apply for a conditional use permit (CUP). The Checkettses did so, and on May 24, 2011, the City Land Use Authority (the LUA) held a public hearing to consider the matter. Less than one month later, the LUA approved the Checkettses' CUP application, thereby permitting the Checkettses to continue operating their business on the Business Lot, subject to several conditions.

¶8     Three of those conditions are significant in light of the events that followed. First, the Checkettses agreed to comply with a landscaping plan for the Business Lot, which they were to "complete[] within 45 days of the approval of the Conditional Use." Second, the Checkettses agreed to bring their use of the Business Lot into compliance with all "rules, regulations, codes, and ordinances." And third, when the Checkettses had filed their application for a building permit in 2005, the City Code provided that a "Home Business" was "any use conducted entirely on [the] homeowner's land." Thus, because the Checkettses owned the Business Lot, their business fit the definition. But in the intervening years, the City Code was amended to require that a homeowner's business be "conducted on land containing the [homeowner's] primary dwelling" to qualify as a "Home Business." For this reason, to bring the Checkettses' use of their land into compliance with the new zoning ordinance, the LUA ordered them to combine their two lots into a single parcel by means of a one-foot strip of land connecting the properties, which the Checkettses had already acquired for that purpose. This, the LUA explained, would require that the Checkettses obtain the City's approval.

¶9     Yet even after they had procured their CUP, the Checkettses continued to miss deadlines. On July 6, 2011, they sent the first of several letters to the City requesting relief from the 45-day window for completing the CUP's landscaping condition, citing their neighbors' appeal of the LUA's CUP decision to the Appeal Authority as the reason for their delay.

Then, in September 2011, they submitted an application to the City to join the Residence Lot and the Business Lot into a single parcel, but they included a request that the City hold their application in abeyance until the neighbors' appeal was resolved. In response to these and similar communications between July 2011 and March 2014, the City did not expressly grant the Checkettses any extension or stay of the 45-day window, but neither did it disallow an extension or stay or affirmatively hold them in violation of any applicable condition or ordinance. In the meantime, the neighbors' appeal made its way from the Appeal Authority to the district court, where the LUA's decision to issue the CUP was ultimately upheld.

¶10    Finally, on March 6, 2014, the City notified the Checkettses that they were operating their business in violation of several sections of the City Code by "[m]aintaining a land use that is not allowed in the zone within which the land use is located." In response, the Checkettses filed an application to amend their existing CUP. But rather than considering the Checkettses' application, the City returned it to them, explaining that there was no longer any valid CUP to amend.

¶11    The Checkettses challenged the validity of the City's actions before the Appeal Authority.[2] After holding a hearing on the matter and receiving comments from the public, the Appeal Authority ruled in favor of the City. In articulating its decision, the Appeal Authority explained that the Checkettses' business "has never been a permitted use [of the Business Lot] in the SFT

---

2. The Checkettses petitioned the district court for review of the City's action at this point as well, but the court dismissed the petition for failure to exhaust administrative remedies. We dismissed the Checkettses' appeal of that decision in *Checketts v. Providence City*, 2016 UT App 161, 381 P.3d 1142. Further, in accordance with rule 33 of the Utah Rules of Appellate Procedure, we awarded the City its attorney fees reasonably incurred in that appeal. *Id.* ¶ 17.

Zone without a CUP" and that the Checkettses had "not shown that all the elements necessary to prove equitable zoning estoppel are present." It made clear, however, that if either party filed a timely petition for judicial review in the district court, the effect of its ruling would be "stayed pending final disposition of that appeal."

¶12    Following their loss before the Appeal Authority, the Checkettses petitioned the district court for review. The parties filed cross-motions for summary judgment, and the court denied the Checkettses' motion and granted summary judgment to the City. Additionally, the court granted the City's motion for an award of attorney fees and costs under section 13-43-206(12) of the Utah Code. That section provides that

> if the same issue that is the subject of an advisory opinion [from the Office of the Property Rights Ombudsman] is listed as a cause of action in litigation, and that cause of action is litigated on the same facts and circumstances and is resolved consistent with the advisory opinion[,] . . . the substantially prevailing party on that cause of action . . . may collect reasonable attorney fees and court costs pertaining to the development of that cause of action from the date of the delivery of the advisory opinion to the date of the court's resolution[.]

Utah Code Ann. § 13-43-206(12)(a)(i)(A) (LexisNexis Supp. 2017). The Checkettses paid the award "under protest" and now appeal the district court's decisions.

ISSUES AND STANDARDS OF REVIEW

¶13    The Checkettses contend that the district court erred in denying their motion for summary judgment and granting the City's motions for summary judgment and an award of attorney

fees. In general, "[w]e review a district court's grant [or denial] of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539. Likewise, although typically "the grant or denial of attorney fees is left to the district court's sound discretion," we review its decision for correctness "to the extent that [the decision to award or deny] statutory attorney fees depends upon an interpretation of the applicable statute." *Warner v. Warner*, 2014 UT App 16, ¶ 16, 319 P.3d 711.

¶14　We also observe that the Utah Supreme Court recently clarified the appropriate standard for reviewing a district court's disposition of a petition for review of an administrative decision. While we review the district court's decision rather than an administrative body's decision directly, "[w]e afford no deference to the [district] court's decision and apply the statutorily defined standard to determine whether the court correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *McElhaney v. City of Moab*, 2017 UT 65, ¶ 26. *Accord* Utah Code Ann. § 10-9a-801(3)(a)(ii) (LexisNexis 2015).[3]

---

3. The Legislature amended section 10-9a-801 in 2017. Among other things, it changed "arbitrary, capricious, or illegal" to "arbitrary and capricious; or illegal." Utah Code Ann. § 10-9a-801(3)(b)(ii)(A)–(B) (LexisNexis Supp. 2017). We apply the previous standard, as it was the standard in effect at the time the Appeal Authority and district court ruled. We express no opinion on whether the analysis would be different under the standard as rephrased. But we are hard pressed to think of an administrative decision being reviewed under this rubric that would be arbitrary but not capricious, or capricious but not arbitrary. As such, we are skeptical that the changed conjunction and punctuation was intended to alter the applicable analysis.

ANALYSIS

I. Motions for Summary Judgment

¶15    The Checkettses maintain that the district court's decision denying summary judgment to them and granting it to the City was erroneous for two reasons. First, they contend that the district court erred in upholding the Appeal Authority's decision that the operation of the business on the Business Lot was not a legal nonconforming use of the property. Second, they contend the court erred in upholding the Appeal Authority's determination that they had failed to prove that the doctrine of zoning estoppel applied to their case. We address each argument in turn.

A.    The Appeal Authority's Legal Nonconforming Use Analysis

¶16  Utah's Municipal Land Use, Development, and Management Act (MLUDMA)[4] provides that, under certain circumstances, a property owner may continue using its land for a particular purpose even after a change in the law renders that purpose impermissible. *See* Utah Code Ann. § 10-9a-511(1)(a) (LexisNexis 2015). This is known as a "nonconforming use." *See id.* § 10-9a-103(37) (LexisNexis Supp. 2017). A property owner's use of its property falls within the definition of a legal "nonconforming use" if three conditions are met: (1) the use "legally existed before its current land use designation"; (2) the use "has been maintained continuously since the time the land use ordinance governing the land changed"; and (3) "because of one or more subsequent land use ordinance changes," the use "does not conform to the regulations that now govern the use of the land." *Id.* The Appeal Authority determined that the Checkettses' use of the Business Lot did not qualify as a legal nonconforming use because the first condition was not satisfied

---

4. MLUDMA is codified at title 10, chapter 9a of the Utah Code.

in their case. Specifically, it determined that the Checkettses' business "has never been a permitted use in the SFT Zone without a CUP."

¶17 The Checkettses argue that the Appeal Authority's determination is "unsustainable" because, in stating its conclusions of law, it merely provides bare legal citations without "analyz[ing] them in light of its findings." Further, they observe that one of the Appeal Authority's legal citations is "nothing more than a description of zoning districts," which "does not describe uses allowed or disallowed within [the SFT Zone]." But to survive the scrutiny of a reviewing court, a land use authority's legal analysis need not be a shining example of lucidity. And because the Checkettses have not argued that the law cited by the Appeal Authority was inapplicable or misconstrued, or that its decision is otherwise illegal, they have not persuaded us that its decision was actually invalid, as opposed to being inartfully explained. *See id.* § 10-9a-801(3)(b)(i) ("A court shall . . . presume that a final decision of . . . an appeal authority is valid[.]"). Our review is therefore statutorily limited to considering whether the Appeal Authority's decision was arbitrary or capricious. *See id.* § 10-9a-801(3)(a)(ii) (LexisNexis 2015) ("The courts shall . . . determine only whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal.").

¶18 "A land use authority's decision is arbitrary or capricious only if it is not supported by substantial evidence in the record." *Pacific West Communities, Inc. v. Grantsville City*, 2009 UT App 291, ¶ 22, 221 P.3d 280 (citation and internal quotation marks omitted). *Accord* Utah Code Ann. § 10-9a-801(c). Substantial evidence is "that quantum and quality of relevant evidence that is adequate" to persuade a reasonable mind. *Pacific West Communities*, 2009 UT App 291, ¶ 22 (citation and internal quotation marks omitted). "In determining whether substantial evidence supports the [land use authority's] decision we will consider all the evidence in the record, both favorable and contrary[,] and determine whether a reasonable mind could

reach the same conclusion as the [land use authority]." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

¶19    Upon applying this highly deferential standard, we have no trouble concluding that the district court was correct in upholding the Appeal Authority's decision that the Checkettses' business was never a permissible use of the Business Lot. In articulating its decision, the Appeal Authority expressly referenced section 10-4-1 of the City Code then in effect. That section established the various zoning districts into which the City is divided, including the district in which the Business Lot lies, namely the SFT Zone. Section 10-6-2 of the City Code, in turn, articulated the uses allowable in each of the zoning districts established in section 10-4-1, and section 10-6-1 made clear that "no land shall . . . be used . . . for other than those uses specified for the district in which it is located." And while the record contains evidence that the Checkettses had been operating wet-cutting and stone-transporting machinery on the Business Lot prior to obtaining their CUP, section 10-6-2 then provided that the only "Commercial/Related" or "Industry and Manufacturing" uses that were permissible in the SFT Zone without a CUP were "Print shop/sales" and "Research facilities." The Checkettses' business activities could not reasonably be said to fit into either of those categories. Therefore, like the district court, we conclude that the Appeal Authority's decision was supported by substantial evidence in the record.

¶20    The Checkettses' other arguments in favor of reversing the Appeal Authority's legal nonconforming use decision are unavailing and merit only brief discussion. To begin with, they argue that the Appeal Authority should have determined that their business was valid at the outset as an "accessory" use, which is a permissible use in SFT Zones under section 10-6-2. The City Code defines an "accessory building" as "[a] subordinate building, attached or detached, and used for a purpose customarily incidental to the main structure on a lot, such as a private garage, offices, storage or repair facilities, etc."

Yet the Checkettses fail to explain why their business is, as a matter of law, more akin to a use associated with an "accessory building" than a "Commercial/Related" or "Industry and Manufacturing" use. The Checkettses also argue that the Appeal Authority must have erred in determining that their use of the Business Lot was never permissible, because it is undisputed that the City approved their building permit for the lot in 2005 and they indicated in their application for that permit that their intended use would be "commercial." But the City could quite reasonably have assumed that the Checkettses intended to limit their use of the lot to those "Commercial/Related" activities that the City Code expressly permitted in the SFT Zone in 2005, such as a "Print shop/sales" business. Finally, the Checkettses argue that the Appeal Authority and the district court both erred in their legal-nonconforming-use analysis because they relied on the Ombudsman's advisory opinion when reaching their conclusions, contrary to "legislative mandate." *See* Utah Code Ann. § 13-43-206(11) (LexisNexis Supp. 2017) (providing that an advisory opinion by the Ombudsman is not "admissible as evidence in . . . a dispute involving land use law"). But the Appeal Authority makes no reference to the Ombudsman's opinion in its findings and conclusions, and the mere fact that its opinion is in agreement with the Ombudsman's is insufficient to demonstrate that the Appeal Authority relied on the Ombudsman's opinion when reaching its conclusions. And further, even if we assume that the district court erred in referencing the Ombudsman's opinion, the question before us is not the validity of the court's decision but that of the Appeal Authority.

B.     The Appeal Authority's Zoning Estoppel Analysis

¶21    The Checkettses next contend the district court erred in upholding the Appeal Authority's decision that they failed to prove the doctrine of zoning estoppel applied in their case. The zoning estoppel doctrine

> estops a government entity from exercising its zoning powers to prohibit a proposed land use when a property owner, relying reasonably and in good faith on some governmental act or omission, has made a substantial change in position or incurred such extensive obligations or expenses that it would be highly inequitable to deprive the owner of his right to complete his proposed development.

*Fox v. Park City*, 2008 UT 85, ¶ 35, 200 P.3d 182 (citation and internal quotation marks omitted). The zoning estoppel doctrine does not apply unless the government entity "committed an act or omission upon which the developer could rely in good faith," and the "action upon which the developer claims reliance must be of a clear, definite and affirmative nature." *Id.* (citation and internal quotation marks omitted). Finally, "exceptional circumstances must be present[,] such as the intentional discriminatory application of the ordinance[,]" before zoning estoppel will apply to preclude government action. *Utah County v. Baxter*, 635 P.2d 61, 65 (Utah 1981).

¶22　The Checkettses maintain that the Appeal Authority erred in its evaluation of the evidence relating to the equitable estoppel issue. They point out that the City approved their application for a building permit in 2005, which indicated that their intended use for the Business Lot would be "commercial," and they further observe that "City inspectors approved the unique building construction for its intended purpose." Nevertheless, while these points may appear significant in isolation, "it is not our place to re-weigh the evidence." *See Baker v. Park City Mun. Corp.*, 2017 UT App 190, ¶ 26, 405 P.3d 962. Because the Checkettses have given us no reason to believe that the Appeal Authority's decision was illegal, our review is limited to determining whether the decision is supported by substantial evidence in the record. *See Pen & Ink, LLC v. Alpine City*, 2010 UT App 203, ¶ 16, 238 P.3d 63. Under this deferential standard of review, "[w]e do not . . . weigh the evidence anew or

substitute our judgment for that of the [land use authority]." *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, ¶ 24, 979 P.2d 332. Instead, "[w]e must simply determine, in light of the evidence before the [land use authority], whether a reasonable mind could reach the same conclusion as the [land use authority]." *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 604 (Utah Ct. App. 1995).

¶23    Considering all the evidence in the record, we believe that reasonable minds could indeed reach the conclusion that the City was not estopped from applying its zoning ordinances in this case. To begin, while it is true that the City did approve the Checkettses' 2005 building permit application, it is also true that it had approved a similar application from the Checkettses for the same lot only a few months before in 2004. And the prior application—to which the City expressly referred when approving the 2005 application—did not indicate an intended commercial use. This supports the Appeal Authority's conclusion that the Checkettses "failed to show . . . that they properly conferred with the City regarding the uses that were permitted at [the Business Lot] before beginning operation of the Business." Furthermore, the record shows that the Checkettses continued to invest heavily in their business throughout the protracted history of their communications with the City regarding their municipal ordinance violations, all the while seeking continuances and otherwise delaying their day of reckoning. This supports the Appeal Authority's conclusion that "the record is replete with warnings from the City that the Business did not comply with the City Code" and that the Checkettses "failed to heed these warnings." At the very least, these facts from the record demonstrate that the equities of the situation were fairly debatable, supporting the conclusion that the Checkettses failed to make the necessary showing of "exceptional circumstances" akin to discriminatory enforcement. *See Baxter*, 635 P.2d at 65. Accordingly, we conclude, as did the

district court, that the Appeal Authority's zoning estoppel decision was not arbitrary or capricious.[5]

## II. Attorney Fees and Costs

¶24   The Checkettses contend that the district court erred in granting the City's motion for attorney fees and costs reasonably incurred while litigating against them. The court granted the City's motion, brought under section 13-43-206(12) of the Utah Code, awarding it a total amount in excess of $17,000.[6] Because we conclude that the Checkettses' challenge to the City's notice of violation did not trigger subsection (12), making the award of

---

5. Here again, the Checkettses maintain that the district court erred in upholding the Appeal Authority's decision because the court made reference to the Ombudsman's advisory opinion in its order. We reject this argument for the same reason we rejected it earlier in our opinion: the Appeal Authority did not mention the Ombudsman's opinion, and it is the decision of the Appeal Authority that is ultimately at issue here.

6. The Checkettses paid the award "under protest" before the district court entered its final order. "The general rule in our state is that if a judgment is voluntarily paid, which is accepted, and a judgment satisfied, the controversy has become moot and the right to appeal is waived." *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 59, ¶ 29, 342 P.3d 761 (citation and internal quotation marks omitted). However, "where a judgment debtor's intention of preserving his right to appeal is made to appear clearly on the record, he does not waive his right to appeal." *Id.* ¶ 33 (citation and internal quotation marks omitted). Accordingly, because the Checkettses made their objection clear on the record, they did not waive their right to appeal the district court's award of attorney fees and costs by paying it in advance of our decision, and now they are entitled to a full refund, as hereinafter explained.

fees and costs pursuant to that section improper, we vacate the district court's award.

¶25    Subsection (12) provides that

(a) [I]f the same issue that is the subject of an advisory opinion is listed as a cause of action in litigation, and that cause of action is litigated on the same facts and circumstances and is resolved consistent with the advisory opinion:

(i) the substantially prevailing party on that cause of action:

(A)may collect reasonable attorney fees and court costs pertaining to the development of that cause of action from the date of the delivery of the advisory opinion to the date of the court's resolution; and

(B) shall be refunded an impact fee[.]

Utah Code Ann. § 13-43-206(12)(a)(i) (LexisNexis Supp. 2017).

¶26    The Checkettses assert that this issue is one of first impression, that it will "present itself repeatedly," and that "[t]he bench, bar, public, and local municipalities and boards will benefit from case law on this point." They request that we "establish guidelines for awarding fees under the statute and for the attendant use of an advisory opinion in land use agencies and on judicial review."

¶27    The Checkettses are correct that this is an issue of first impression. Indeed, section 206—much less subsection (12)—has never before been cited in any appellate decision although it was enacted over a decade ago, in 2006. We believe that a discussion of subsection (12) and related provisions is in order to determine its scope.

¶28 Title 13, Chapter 43 of the Utah Code is known as the "Property Rights Ombudsman Act." The Property Rights Ombudsman Act outlines the duties and functions of the Office of the Property Rights Ombudsman (the Office). Among other duties, the Office "shall . . . provide information to private citizens, civic groups, government entities, and other interested parties about takings, eminent domain, and land use law." *Id.* § 13-43-203(1)(a)(vii). One of the Office's functions is to provide advisory opinions on certain topics outlined in section 13-43-205. At the time the City requested an advisory opinion from the Office in 2011, section 205 expressly permitted "[a] local government, private entity, or a potentially aggrieved person" to request an opinion only on the following topics: impact fees, conditional uses, nonconforming uses, exactions, and land use applications and related fees. *Id.* § 13-43-205 (LexisNexis 2013). Advisory opinions serve as a quasi-mediation tool, but they are "not binding on any party to, nor admissible as evidence in, a dispute involving land use law" except for obtaining attorney fees under section 206(12). *Id.* § 13-43-206(11) (LexisNexis Supp. 2017). It is within this context that the Legislature enacted subsection (12).

¶29 The language the Legislature used to describe what triggers the applicability of subsection (12) is illuminating: parties may not make use of the attorney fee provision unless the issue of the advisory opinion "is listed as a cause of action in litigation." *Id.* § 13-43-206(12). This language comes on the heels of subsection (11), in which the Legislature used much broader language—an advisory opinion "is not binding on any party to, nor admissible as evidence in, *a dispute involving land use law* except as provided in Subsection (1)"—to describe the admissibility of advisory opinions in any forum or tribunal. *Id.* § 13-43-206(11) (emphasis added). For several reasons, we do not believe subsection (12) was triggered here.

¶30 We conclude that for the purposes of section 206, a challenge to a local land use authority's decision regarding a land use dispute is not a "cause of action in litigation" as

required by subsection (12). If the Legislature meant for subsection (12) to apply to challenges to a local land use authority's decision, it could have mirrored the language it used in subsection (11) and stated that a party could obtain attorney fees where the issue of the advisory opinion is the same issue contested in a land use dispute. But it did not do so, and we must presume that the Legislature "used each word advisedly." *See Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation and internal quotation marks omitted). Rather, it appears that the Legislature intended subsection (12) to be triggered only by litigation originating in district court, such as declaratory judgment or condemnation actions.

¶31   It also appears that the Legislature intended subsection (12) to apply only to a few narrow subject matters. Significantly, much of subsection (12) discusses impact fees, and it does not mention any other topic for which a party may request an advisory opinion under section 205. This is significant, because we presume that omissions by the Legislature are purposeful. *Bagley*, 2016 UT 48, ¶ 10. Moreover, subsection (12) provides that

> (i)   the substantially prevailing party on that cause of action:
>
> (A) may collect reasonable attorney fees . . . from the date of the delivery of the advisory opinion to the date of the court's resolution; *and*
>
> (B) *shall* be refunded an impact fee . . . based on the difference between the impact fee paid and what the impact fee should have been if the government entity had correctly calculated the impact fee.

Utah Code Ann. § 13-43-206(12)(a)(i) (emphasis added). The use of the conjunction "and," immediately followed by "shall be

refunded an impact fee," suggests that the Legislature intended subsection (12) to be narrowly focused to causes of action related to impact fee challenges or other actions first brought in district court. Indeed, in 2011, the Legislature enacted the Impact Fees Act, in which it stated that land owners have "standing to file a declaratory judgment action challenging the validity of an impact fee." *Id.* § 11-36a-701(1) (LexisNexis 2015). Later in section 701, the Legislature enacted an exact replica of subsection (12). Although the Legislature essentially copied and pasted subsection (12) into section 701, it did not do so anywhere else in the Utah Code.

¶32    Also revealing is that, in 2014, the Legislature amended section 205 of the Property Rights Ombudsman Act to add another topic on which land owners and local governments could request advisory opinions. The amendment provides that land owners may request an advisory opinion on whether their property has been taken "for a public use without just compensation." *Id.* § 13-43-205(2)(c) (LexisNexis Supp. 2017). The amendment also includes an attorney fee provision, which provides that the advisory opinion "may justify an award of attorney fees against the condemning entity . . . only if the court finds that the condemning entity: (a) does not have a colorable claim or defense for the entity's actions; and (b) continued occupancy without payment of just compensation and in disregard of the advisory opinion." *Id.* § 13-43-205(3). To take advantage of this attorney fee provision, a land owner would necessarily be dueling with the condemning authority in district court. This strengthens our view that the Legislature did not intend subsection (12) to be triggered unless the issue of an advisory opinion was "listed as a cause of action in litigation" originating in district court.

¶33    After reviewing the plain language of subsection (12) in light of its surrounding context, we conclude that the Checkettses challenge to the City's notice of violation did not trigger subsection (12). We therefore vacate the district court's

award of attorney fees and costs to the City and remand with the direction that those sums be fully refunded to the Checkettses.

CONCLUSION

¶34    For the foregoing reasons, we affirm the district court's decisions denying summary judgment to the Checkettses and granting it to the City. However, we vacate the court's award of attorney fees and costs—except, of course, to the extent that taxable costs of the action were due to the City as the prevailing party—and remand for the limited purpose of overseeing the Checkettses' full refund of the fees they paid under protest.[7]

---

7. We deny the City's request for an attorney fee award under rule 33 of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 33(a), (b). We recognize that the Checkettses plainly jumped the gun when filing their previous appeal, for which they were duly sanctioned, *see Checketts v. Providence City*, 2016 UT App 161, 381 P.3d 1142, but this appeal was on a much firmer legal footing and, indeed, the Checkettses prevailed on one of their issues.