**2023 UT App 89**

## THE UTAH COURT OF APPEALS

SIX BLUE BISON LLC,
Appellant,
*v.*
ALPINE CITY,
Appellee.

Opinion
No. 20210781-CA
Filed August 17, 2023

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 210400257

Graden P. Jackson and William B. Ingram,
Attorneys for Appellant

Paxton R. Guymon and Landon A. Allred,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      In 2020, Six Blue Bison LLC (Blue Bison) filed with Alpine City (Alpine) an application to amend an existing plat known as the Summit Pointe Subdivision (the Subdivision), which is adjacent to Draper City (Draper). The amendment sought to extend the road in the Subdivision and replace an approved "hammerhead turnaround" with a cul-de-sac that would include a gated, non-public road for emergency use only.

¶2      The Alpine City Council (the Council) rejected Blue Bison's application. After exhausting its administrative remedies, Blue Bison petitioned the district court for review of the Council's decision. Thereafter, Blue Bison filed for summary judgment, and

the district court denied the motion and granted summary judgment in favor of Alpine. We affirm.

BACKGROUND

¶3      The Subdivision is located within Alpine, on the border with Draper. In 2017, Alpine approved a plan for Plat A in the Subdivision (the Approved Plat). The Approved Plat contains four parcels connected with a long, private shared driveway that extends through the Subdivision from an existing public street. The driveway approaches the boundary line with Draper but ends in a hammerhead turnaround within Alpine.

¶4      Blue Bison acquired the Subdivision in 2017. Thereafter, Blue Bison applied to Alpine to amend the Approved Plat by dividing it into eight lots and converting the private shared driveway to a public through road. The through road would connect Alpine's road system to a proposed 415-unit residential development in Draper owned by Blue Bison. The application was not approved on the ground that it "did not comply with [Alpine's] general plan" because the amendment would "create a new connection or 'gateway' into" Draper. In rejecting the application, Alpine staff also noted that if Blue Bison was not allowed to turn the shared driveway into a through road that would connect to Draper, the resulting stub street would be considered a cul-de-sac that would be "more than three times longer than" the limit allowed for cul-de-sacs by the Development Code of Alpine City (Alpine City Code). Blue Bison appealed that denial.

¶5      While that appeal was pending, Blue Bison met with Alpine and suggested a "compromise" to address concerns with the requested amendment. Blue Bison's compromise "was a long cul-de-sac with just an emergency access road that connected to a future Draper development, as opposed to the full road." In essence, Blue Bison's compromise would avoid creating either a

through road connecting to Draper *or* an over-length cul-de-sac by creating a hybrid road that would dead-end in a cul-de-sac at the border with Draper. This hybrid road would contain a non-public connection for use by emergency vehicles only.

¶6 Blue Bison memorialized the compromise in a new application for a plat amendment (the Proposed Amendment). Members of Alpine staff reviewed the Proposed Amendment and issued a report finding that the proposed "cul-de-sac with a fire access connection . . . meets [Alpine's] General Plan." The report and the Proposed Amendment were then presented to the Alpine City Planning Commission (the Commission). After some back and forth and the addition of ten "conditions/changes" to the Proposed Amendment, the Commission voted to refer the Proposed Amendment to the Council for review.

¶7 In June 2020, the Council held a public meeting to consider and vote on Blue Bison's application for the Proposed Amendment. After some introductory remarks, one of the council members moved to deny the application for three reasons:

> 1. The [Proposed Amendment] would create one long road with only one public outlet, effectively creating a cul-de-sac that is longer than is allowed by the letter and spirit of [Alpine City Code].
>
> 2. The emergency access road to Draper is not provided for as part of [Alpine's] general plan.
>
> 3. [Alpine] has previously approved a subdivision plat for the property which provided for two access roads within [Alpine], therefore . . . the long, single access road with an emergency access is not necessary to allow the property owner to enjoy full property rights afforded . . . under [Alpine] ordinances.

¶8    Extensive discussion on the Proposed Amendment followed, which included negative comments by a neighborhood representative and an attorney hired by neighbors who opposed the Proposed Amendment. After considering these comments and discussing the Proposed Amendment, the Council voted to deny Blue Bison's application, based on the three reasons articulated above.

¶9    Blue Bison appealed the Council's decision to the city land use appeals hearing officer (Hearing Officer), who affirmed the Council's decision. In his written decision, the Hearing Officer expressed his misgivings with the Council's decision, finding it "significant" that there was "very little, if any, detailed, technical discussion of the application" for the Proposed Amendment at the June meeting, and that "the three bases for denial in [the Council's] motion were not discussed in any meaningful way before . . . the motion" was made. Nevertheless, relying on *Baker v. Park City Municipal Corp.*, 2017 UT App 190, 405 P.3d 962, the Hearing Officer concluded that the Council "had the discretion to deny Blue Bison's application for any reason" under Utah Code section 10-9a-609, and therefore the Council's denial was proper.

¶10    Having exhausted its administrative remedies, Blue Bison petitioned the district court for review of the Council's decision, and it subsequently filed a motion for summary judgment. The court denied the motion, concluding that the Council's decision was not arbitrary and capricious, because the Proposed Amendment "does not comply with all applicable land use codes." In particular, the court found that the new road created in the Proposed Amendment would (1) be an overlength cul-de-sac in violation of Alpine City Code and (2) constitute a "connection" between Alpine and Draper that was not contemplated in Alpine's general plan, in violation of Utah Code section 10-9a-406. In addition, the court found that even if the Proposed Amendment complied with all applicable land use codes, the Council still had the ability to deny it. Citing *Baker*, the court

explained that approving a plat amendment under Utah Code section 10-9a-609 is discretionary and Alpine's "conclusions that the proposed road is *too much* of a cul de sac and also *too much* of a through road [to] [Draper] are valid bases for denying the [Proposed Amendment]." Lastly, the court found that the Council's decision was not illegal because the Council's "interpretation of its cul de sac ordinances and the state's road statute are not 'based on an incorrect interpretation of a land use regulation' or 'contrary to law.'"

## ISSUE AND STANDARD OF REVIEW

¶11   Blue Bison now appeals the district court's denial of its motion for summary judgment. "In general, we review a district court's grant or denial of summary judgment for correctness and afford no deference to the court's legal conclusions." *Checketts v. Providence City*, 2018 UT App 48, ¶ 13, 420 P.3d 71 (quotation simplified). "On appeal from a district court's review of an administrative agency's decision, we afford no deference to the district court's decision and apply the statutorily defined standard to determine whether the court correctly determined whether the administrative decision was arbitrary, capricious, or illegal." *Ferre v. Salt Lake City*, 2019 UT App 94, ¶ 10, 444 P.3d 567 (quotation simplified), *cert. denied*, 455 P.3d 1060 (Utah 2019); *accord McElhaney v. City of Moab*, 2017 UT 65, ¶ 26, 423 P.3d 1284.

## ANALYSIS

¶12   Blue Bison contends the district court erred in denying its motion for summary judgment and granting judgment in favor of Alpine. Although Blue Bison frames the issue slightly differently, the basic question before us is whether the district court correctly determined that the Council's denial of the Proposed Amendment was not arbitrary and capricious or illegal. We address each issue in turn.

I. Substantial Evidence

¶13    Blue Bison first argues the district court erred by concluding that the Council's decision to deny the Proposed Amendment was supported by substantial evidence in the record. This issue is easily resolved in light of the deferential standard of review applied to the type of land use decision at issue.

¶14    As a general matter, "[u]nder Utah law, a municipality's land use decisions are accorded a great deal of deference." *Ferre v. Salt Lake City*, 2019 UT App 94, ¶ 11, 444 P.3d 567, *cert. denied*, 455 P.3d 1060 (Utah 2019). A reviewing court must "presume that a final land use decision of a land use authority or an appeal authority is valid" and must uphold the decision unless it is "arbitrary and capricious" or "illegal." Utah Code § 10-9a-801(3)(b).

¶15    "A land use authority's decision is arbitrary or capricious only if it is not supported by substantial evidence in the record." *Checketts v. Providence City*, 2018 UT App 48, ¶ 18, 420 P.3d 71 (quotation simplified); *accord* Utah Code § 10-9a-801(c)(i). "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Baker v. Park City Mun. Corp.*, 2017 UT App 190, ¶ 17, 405 P.3d 962 (quotation simplified).

¶16    "In determining whether substantial evidence supports the land use authority's decision we will consider all the evidence in the record, both favorable and contrary, and determine whether a reasonable mind could reach the same conclusion as the land use authority." *Checketts*, 2018 UT App 48, ¶ 18 (quotation simplified). "We do not, however, weigh the evidence anew or substitute our judgment for that of the municipality." *Baker*, 2017 UT App 190, ¶ 18 (quotation simplified). "Rather, we must simply determine, in light of the evidence before the land use authority, whether a reasonable mind could reach the same conclusion as the authority." *Id.* (quotation simplified).

¶17   With these general principles in mind, we next turn to the land use decision at issue in this case. As discussed above, Blue Bison filed its application for the Proposed Amendment with the goal of amending the Approved Plat by further subdividing it and converting the approved private driveway into a public "hybrid" road. Because Blue Bison was seeking to amend an existing plat rather than obtain approval for an original plat, the Council, acting in its capacity as the land use authority, denied the Proposed Amendment pursuant to section 609 of Utah's Municipal Land Use, Development, and Management Act (MLUDMA) on the ground that there was "good cause" to deny the amendment.[1]

---

1. In an attempt to obtain a more favorable standard of review, Blue Bison repeatedly cites section 3.31.030 of the Alpine City Code—which governs "boundary line adjustment[s]"—rather than section 609 of MLUDMA and analyzes the propriety of the district court's decision under section 3.31.030. *See generally* Alpine City Code § 3.31.030, https://alpine.municipalcodeonline. com/book?type=development#name=3.31.030_Property_Within_ A_Recorded_Subdivision [https://perma.cc/C828-ZKEH]. Blue Bison complains that the court's review of the Council's decision was flawed because the court "disregarded" section 3.31.030 in making its decision. However, Blue Bison has not preserved this issue for our review.

   Although we are reviewing the decision of the district court rather than that of the Council, our preservation rules dictate that for us to properly reach an issue, it must have been first raised in each forum below. Therefore, in the context of an appeal from an administrative decision, an issue is preserved only if it is presented to both the district court and the agency. *See Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Env't Quality*, 2016 UT 49, ¶ 32 n.12, 391 P.3d 148 ("[R]egardless of how much deference we extend, any issue still must be

(continued…)

¶18    Section 609 of MLUDMA provides that "[t]he land use authority *may* approve the . . . amendment of a plat . . . if the land use authority finds that . . . there is *good cause* for the . . . amendment" and "no public street or municipal utility easement has been vacated or amended." Utah Code § 10-9a-609(1) (emphasis added). Since the word "may" is "discretionary rather than mandatory," *see Baker*, 2017 UT App 190, ¶ 21 n.7, "applications for plat amendments do not enjoy a presumption of regularity with an expectation of approval," *id.* ¶ 30. Moreover, because "MLUDMA does not define 'good cause,' municipalities necessarily have some discretion in determining what constitutes 'good cause' for a plat amendment." *Id.* ¶ 23. As such, even though an application to amend a plat may comply with all applicable land use regulations, substantial evidence may nevertheless support its denial. *See id.* ¶ 26.

¶19    In support of its decision to deny the Proposed Amendment, the Council articulated three specific reasons as to

---

preserved at both the fact-finding and intermediate appellate levels."). As relevant here, when the Proposed Amendment was being reviewed by Alpine staff, the Commission, and the Council, the application was treated by both sides as an effort to amend a plat. This characterization continued through Blue Bison's involvement with the Hearing Officer, where the only statutory section raised in Blue Bison's briefing was section 609 of MLUDMA. It was not until Blue Bison petitioned for judicial review that it began citing section 3.31.030 in the hope of obtaining a more favorable outcome. *Compare* Alpine City Code § 3.31.030 (stating that the Council "shall approve" a "proposed boundary line adjustment" if the proposal "complies with all applicable requirements"), *with* Utah Code § 10-9a-609 (stating that a land use authority "may approve" a plat amendment if there is "good cause"). Because section 3.31.030 was never at issue before the Council, any argument relating to its application, including whether the district court "disregarded" it, is unpreserved.

why "good cause" did not exist. To determine whether the Council's ultimate decision was valid, we need not separately examine if substantial evidence supported each reason. Instead, we must uphold the district court's decision so long as there is substantial evidence supporting at least one of the Council's reasons to deny the application. *See id.* ¶ 20. Here, we focus on the Council's second reason: "The emergency access road to Draper is not provided for as part of [Alpine's] general plan." Because we conclude this reason was supported by substantial evidence, we need not address the other two.

¶20    Under MLUDMA, municipalities are required to adopt a general plan. *See generally* Utah Code § 10-9a-401. Once a general plan has been adopted, "no street, park, or other public way, ground, place, or space, no publicly owned building or structure, and no public utility, whether publicly or privately owned, may be constructed or authorized until and unless it conforms to the current general plan." *Id.* § 10-9a-406. Here, it is undisputed that Alpine's general plan does not expressly contemplate a road connecting Alpine to Draper at or anywhere near the location of the road in the Proposed Amendment. We hold that it was within the Council's discretion to decide that under the facts of this case "good cause" for denial of a plat amendment would include the fact that the proposed road is not explicitly included in the Alpine general plan. *See Baker*, 2017 UT App 190, ¶ 23 (holding that "municipalities necessarily have some discretion in determining what constitutes 'good cause' for a plat amendment").

¶21    Blue Bison resists this conclusion. Primarily, Blue Bison contends that even if Alpine's general plan does not expressly contemplate a road at the site proposed, the proposed road may nevertheless "conform to" Alpine's general plan because section 406 of MLUDMA "does not demand strict adherence to a static map" but instead contemplates that a general plan be used only as a "guide." But the Council did not find that the proposed road does not "conform to" the plan. Instead, it found that the

proposed road "*is not provided for* as part of [Alpine's] general plan" and that this was good cause for denial of the Proposed Amendment. (Emphasis added.) It was certainly within the Council's discretion to conclude that there was no good cause for converting a private driveway into a potential through road connecting to a neighboring city when that road was not explicitly provided for in the general plan. Moreover, it is undisputed factually that the proposed road is not explicitly provided for in Alpine's general plan. Thus, substantial evidence supports the factual underpinning for the Council's good cause decision.

¶22    Based on the foregoing, we agree with the district court's determination that the Council's decision to deny the Proposed Amendment was supported by substantial evidence and was therefore not arbitrary and capricious.

## II. Illegality

¶23    Blue Bison next argues the Council's decision to deny the Proposed Amendment was illegal because it was based solely on public clamor rather than on record evidence. In making this argument, Blue Bison asserts the district court incorrectly interpreted the Alpine City Code and state law to conclude there are "valid bases aside from the clamor" to support the Council's decision.[2] A land use decision is "illegal" if it "is based on an

---

2. As part of this argument, Blue Bison contends the district court "disregard[ed] the mandatory language of Section 3.31.030 of the [Alpine] City Code for approving a plat amendment." But Blue Bison did not preserve this issue. "To preserve an issue for appeal, the issue must have been presented in such a way that a lower tribunal had the opportunity to rule on it." *LJ Mascaro Inc. v. Herriman City*, 2018 UT App 127, ¶ 27, 428 P.3d 4. Here, it was not until after oral argument with the Hearing Officer—which occurred months after the Council rendered its decision—that

(continued…)

incorrect interpretation of a land use regulation" or it "is contrary to law." Utah Code § 10-9a-801(c)(ii). "Thus, whether a decision is illegal depends on a proper interpretation and application of the law." *Staker v. Town of Springdale*, 2020 UT App 174, ¶ 45, 481 P.3d 1044 (quotation simplified).

¶24    Blue Bison has not persuaded us that the Council's decision was illegal. As discussed above, the Proposed Amendment sought to amend an existing plat. Accordingly, even if the application complied with all applicable land use regulations, its approval was still contingent on the Council finding "good cause" to approve the application. *See* Utah Code § 10-9a-609(1)(a). And in determining what constitutes "good cause," the Council is necessarily entitled "some discretion." *See Baker v. Park City Mun. Corp.*, 2017 UT App 190, ¶ 23, 405 P.3d 962. Moreover, this court's decision in *Baker* recognizes that a determination that good cause exists to deny a plat amendment amounts, as a practical matter, to a determination that no good cause exists to approve it. *See id.* ¶ 21.[3]

---

Blue Bison identified section 3.31.030 as a basis for challenging the Council's decision. Accordingly, we do not further address this issue. *See supra* note 1.

3. Importantly, and in any event, as this court stated in *Baker v. Park City Municipal Corp.*, 2017 UT App 190, 405 P.3d 962, "section 609(1)(a) contains discretionary rather than mandatory language." *Id.* ¶ 21 n.7; *see* Utah Code § 10-9a-609(1)(a) (stating that a "land use authority may approve the . . . amendment of a plat . . . if the land use authority finds that . . . there is good cause for the . . . amendment"). "Thus, even if the Council had expressly concluded that good cause existed for [Blue Bison's] amendment, it would not necessarily have been obligated to approve it." *See Baker*, 2017 UT App 190, ¶ 21 n.7.

¶25    On the record before us, not only is there ample evidence that the proposed road is not provided for as part of the Alpine general plan, but the evidence of that fact is undisputed. In addition, when discussing whether to approve or deny the Proposed Amendment, council members voiced concern about the safety of the proposal. Council members noted that regardless of whether the road was technically classified as a cul-de-sac or a connection to Draper, the resulting road would create traffic concerns. As drawn, and with the gate closed, the road would function like an overlength cul-de-sac, providing only one access point for the Subdivision. Moreover, if plans were to change and the gate was allowed to remain open, the anticipated inter-county traffic from Draper would be substantial because the road in the Proposed Amendment would connect Alpine with a planned 415-unit residential development in Draper. These considerations are all relevant to the determination that good cause exists to deny a plat amendment that would allow a road of this character where the road is not explicitly contemplated in Alpine's general plan.

¶26    In sum, the Council's decision to deny the Proposed Amendment was not illegal. The Council's decision was based on the proposed road not being expressly included in Alpine's general plan, and on valid and related concerns regarding traffic and safety. And these concerns were borne out by evidence in the record. Accordingly, the decision was not based solely on public clamor.[4]

―――――――――――――――――

4. Although we have determined that the Council's decision was not the result of public clamor, we question whether the public clamor doctrine is even applicable in cases involving plat amendments. Blue Bison did not provide, and we could not find, a case in which the public clamor doctrine was discussed in relation to a plat amendment application. Rather, the caselaw cited by Blue Bison indicates only that the doctrine applies to

(continued…)

CONCLUSION

¶27     The district court did not err in denying Blue Bison's motion for summary judgment and granting judgment in favor of Alpine. There is substantial evidence in the record before us supporting the Council's decision to deny the Proposed Amendment and the Council's decision was therefore not arbitrary and capricious. Furthermore, the Council's denial of the Proposed Amendment rested on a proper interpretation of all applicable land use regulations, and therefore Blue Bison cannot show that the decision was illegal. Affirmed.[5]

––––––––––

conditional use permits. *See, e.g.*, *Davis County v. Clearfield City*, 756 P.2d 704, 711–12 (Utah Ct. App. 1988) (finding the city's decision to deny a conditional use permit was arbitrary and capricious where the city relied solely on "public clamor"), *cert. denied*, 765 P.2d 1278 (Utah 1988).

5. Alpine argues it should be awarded attorney fees under Utah Code section 10-9a-801(10). While we ultimately resolve this matter in Alpine's favor, we do not find Blue Bison's challenge to rise to the level of bad faith as contemplated under the statute. We therefore deny Alpine's request for attorney fees. *See* Utah Code § 10-9a-801(10) ("If the court determines that a party initiated or pursued a challenge to a land use decision on a land use application in bad faith, the court may award attorney fees.").